**BASS BUSTER, INC., Plaintiff,**

v.

**GAPEN MANUFACTURING COMPANY, INC., and Daniel D. Gapen, doing business as Gapen's, Gapen's Flies, and Gapen Tackle Co., Defendants.**

Civ. A. No. 73CV437–W–3.

United States District Court, W. D. Missouri, W. D.

Aug. 19, 1976.

As Amended Oct. 8, 1976.

Edward W. Mullen, Deacy & Deacy, Kansas City, Mo., Beverly Pattishall, Chicago, Ill., for plaintiff.

Carter H. Kokjer, Lowe, Kokjer, Kircher, Wharton & Bowman, Kansas City, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT FOR PLAINTIFF GRANTING PRAYERS FOR INJUNCTIVE RELIEF AND AN ACCOUNTING

WILLIAM H. BECKER, Chief Judge.

■ This is an action for trademark infringement and unfair competition brought under the Lanham Act, Sections 1051–1127, Title 15, United States Code, and the common law.[1]

Plaintiff, a manufacturer of fishing lures, claims trademark rights in the name BEETLE used separately and in the forms BEETLE SPIN, SUPER BEETLE, and ORIGINAL BEETLE, for a combination jig fishing lure with a plastic body. Plaintiff contends that defendants, through their use of the name BEETLE separately and in the forms BEETLE PLUS and UGLY BEETLE, for virtually identical jig fishing lures with plastic bodies, have infringed upon its trademark. Plaintiff seeks equitable relief in the form of an injunction against defendants' continued use of the name BEETLE for its identical lure and an accounting for profits derived by defendants from their

---

1. Plaintiff also asserted claims under the laws of the State of Missouri. However, no Missouri statutes conferred trademark rights at the time this action was brought, beyond the right to register a mark. *See:* Section 417.010, *et seq.*, R.S.Mo., VAMS. In 1973, the General Assembly of Missouri enacted a new trademark statute which did confer some substantive rights. See Section 417.005, *et seq.*, R.S.Mo., VAMS. However, the new statute is inapplicable to actions brought prior to September 28, 1973. *See:* Section 417.066(2), R.S.Mo., VAMS.

use of the name BEETLE, and costs including attorneys' fees.

Defendants, who also manufacture and sell fishing lures, contend that plaintiff cannot acquire valid trademark rights or other legally protectable rights in the name BEETLE. Defendants contend that the name BEETLE is descriptive of the natural bait insect that the jig with a plastic body resembles; that no secondary meaning has attached to plaintiff's use of the claimed mark; that the name BEETLE is "deceptively misdescriptive" when applied to plaintiff's lure; that third party usage has destroyed the distinctiveness of the mark; and that trademark rights cannot be acquired in a name of a simulated natural bait for a fishing lure. They have counterclaimed for a declaratory judgment that plaintiff cannot acquire valid trademark rights in the name BEETLE, and they seek cancellation of plaintiff's federal and state trademark registrations.

Jurisdiction exists over plaintiff's federal trademark infringement and unfair competition claims, and over defendants' counterclaim for cancellation of plaintiff's federal registration, under Section 1121, Title 15, United States Code, and Section 1338(a), Title 28, United States Code. Jurisdiction exists over plaintiff's common law unfair competition claim under Section 1338(b), Title 28, United States Code, because it is joined with a "substantial and related claim under the . . . trade-mark laws." Finally, jurisdiction exists over plaintiff's claim for common law trademark infringement, and over defendants' counterclaim for cancellation of plaintiff's state registrations, under Section 1332, Title 28, United States Code, because the parties are citizens of different states and the value of the rights in controversy exceeds $10,000.00, exclusive of interest and costs.

After completion of the pretrial proceedings and the filing of Pretrial Order No. 2, the trademark infringement, unfair competition, cancellation and declaratory judgment issues were tried by the Court without a jury in a plenary evidentiary trial. Comprehensive post-trial briefs and proposed findings of fact and conclusions of law have been filed. Oral argument on the proposed findings of fact and conclusions of law was heard. After careful consideration of the stipulations of fact, the evidence presented, and the factual and legal contentions of the parties, the following findings of fact and conclusions of law are made.

I. *Findings of Fact.*

The material factual issues in the action include the following: (1) whether plaintiff has acquired trademark rights in the name BEETLE for the combination jig fishing lure with a plastic body, by prior appropriation and use, and through state and federal registration, of the name; (2) whether the name BEETLE is descriptive of the combination jig fishing lure with a plastic body; (3) if it is descriptive, whether the name BEETLE has acquired secondary meaning; (4) whether the name BEETLE is "deceptively misdescriptive" as applied to the jig fishing lure with a plastic body;[2] (5) whether the distinctiveness of the mark has been destroyed by third party usage; (6) whether there is a likelihood of confusion between plaintiff's and defendants' use of the word BEETLE; and (7) whether defendants have used the name BEETLE in a manner which results in "passing off" its product for that of plaintiff.

A. *Prior appropriation and use by the parties.*

1. *Appropriation and use by the plaintiff.*

Plaintiff, Bass Buster, Inc. (hereinafter "plaintiff"), is a Delaware corporation, having its principal place of business in Amsterdam, Missouri. Its business consists of the manufacture, advertising, and sale of fishing lures. Plaintiff is the successor in interest to the business of Virgil Ward, an

---

**2.** The issue of "deceptive misdescription" was not raised in Pretrial Order No. 2. Although plaintiff has noted this fact, this issue was tried and argued by the parties, and will therefore be considered. Rule 15(b) of the Federal Rules of Civil Procedure. It would be appropriate to treat the issue as abandoned by the plaintiff.

individual, who did business under the names "Bass Buster Company" and "Ward Company"; and to "Bass Buster, Inc.," a Missouri corporation which earlier acquired the business of Virgil Ward in 1970. Plaintiff is a subsidiary of Johnson Diversified, Inc., a corporation, which purchased the assets of Bass Buster, Inc., the Missouri corporation in 1971.[3]

Virgil Ward began manufacturing fishing lures in 1948. The business was initially unsuccessful and was temporarily abandoned. In 1955, Ward resumed the manufacture and marketing of fishing lures on a relatively small basis. In 1962, Ward won a fishing competition known as "The World Series of Sport Fishing." The attendant publicity accelerated the expansion of his fishing lure business, and enabled Ward to obtain radio and television publicity which aided his fishing lure business.

In late 1963 or early 1964, Ward was approached by an amateur sport fisherman Claire W. ("Chuck") Wood with a model of a fishing lure which Wood had developed. Wood had fished extensively with relatively long plastic worms, but had become frustrated by missed strikes. As a result Wood began to experiment with shortening the length of the plastic worm. He cut off successively longer lengths of the worm's tail beyond the hook. The resulting lure had a lead head, a plastic worm-like body surrounding the bend and shank of the hook and a split in the terminal trailing part. This lure is hereinafter referred to as the "jig with a plastic body," and is more fully described in part I(B), *infra*.

Wood supplied hand made models of the jig with a plastic body and urged Ward to manufacture the lure. Initially Ward was hesitant, but later agreed to begin manufacture after Wood informed him that a competitor, the Mar Lynn Lure Company of Blue Springs, Missouri, was considering marketing the lure. Wood's compensation for supplying the idea and models was a supply of lures from time to time, with which he was satisfied.

In 1964, plaintiff introduced the jig with a plastic body under the name BEETLE BUG. After about a month, the name of this lure was shortened to BEETLE. Ward states that the name BEETLE was chosen in an effort to capitalize on the name of the then popular "Beatles" musical group from England.

Since 1964, plaintiff has marketed modified versions of these BEETLE lures under names combining BEETLE with other words. In 1965, a larger size jig with a plastic body was introduced as the SUPER BEETLE. In 1968 or 1969 plaintiff attached a spinner to the BEETLE lure and named the combination the BEETLE SPIN. Finally, in 1971 or 1972, plaintiff began to market the BEETLE lures as the ORIGINAL BEETLE. Each of these lures has been marketed in several different colors and sizes.

Sales of plaintiff's line of BEETLE lures increased steadily from 1964 to the date of the trial. In 1968 the BEETLE lures accounted for approximately 50 percent of plaintiff's annual sales of $360,000. By the 1970–71 fiscal year of the plaintiff, the BEETLE lures accounted for approximately 75 percent of plaintiff's annual sales of $900,000. By the 1974–75 fiscal year, plaintiff's annual sales had increased to $2,800,000 with the BEETLE lures accounting for 75 percent of the sales.

Plaintiff's BEETLE lures have been advertised extensively in print advertising and catalogues distributed throughout the nation since 1964.[4] However, the principal form of advertising has been promotion of the lures on Virgil Ward's periodic continuing television program, "Championship Fishing."

Ward first began to broadcast fishing programs in 1962 on radio. In 1964, Ward and his son, Billy Ward, appeared several times on a television sports show, broadcast in the Springfield, Missouri, area, named "Ozark Outdoors," showing film clips of

---

**3.** Plaintiff's Exhibit (hereinafter "Pl. Ex.") Nos. 2, 3, 4.

**4.** Pl. Ex. Nos. 10–13; Defendants' Exhibits (hereinafter "Def. Ex.") Nos. 78–82.

fish being caught on their fishing lures. In 1965, Ward became a "permanent guest" on this television program. In 1966, Ward began his own television program, "Championship Fishing," which was telecast in the Kansas City area. By 1969, "Championship Fishing" was telecast by television stations across the United States. The number of stations telecasting the program increased to forty-six in 1970, fifty-two in 1971, eighty in 1972.

Promotion of plaintiff's BEETLE lures in connection with "Championship Fishing" took two forms.

First, until 1962, the lures were promoted extensively by name during the body of the program. Films were shown of Ward and his guests fishing with the BEETLE lures. In narrating the film segments, Ward frequently referred to BEETLE lures by name and commented on the manner in which they were used and their success. This form of promotion ended in 1972 when the Federal Communications Commission prohibited the naming of a specific product during the noncommercial part of a telecast.[5]

Second, beginning in about 1968, plaintiff advertised its BEETLE lures through paid commercial advertisements televised in connection with "Championship Fishing." Several commercial video film clips for telecasting were made each year describing the lures, the manner in which they were to be fished, the merchandising aids, and in some cases named a local seller of the lures. In the late 1960's, these commercial film clips were telecast from nine to twenty-five cities, from mid-Kansas to mid-Tennessee. By 1970, the commercial film clips were telecast in forty-six cities from Colorado to the east coast. By 1971, they were telecast over approximately fifty-three stations from coast to coast.[6]

Because the promotion of plaintiff's BEETLE lures in the fishing segments of "Championship Fishing" was by personal appearance and was not paid advertising, the total cash value of the advertising of the lures by plaintiff and its predecessors cannot be estimated. The cash expenditures for advertising the BEETLE lures for the four fiscal years prior to trial were approximately:

| | |
|---|---|
| 1971–1972 | $ 75,000 |
| 1972–1973 | $112,500 |
| 1973–1974 | $150,000 |
| 1974–1975 | $175,500 |

Plaintiff has not filed for federal registration of the mark BEETLE used alone as a name for the BEETLE lures. But plaintiff did file an application for federal registration of the mark BEETLE SPIN with the United States Patent Office in April, 1971. The word "SPIN" was disclaimed apart from the trademark. The registration was approved on November 28, 1972, under Registration No. 947,854.[7]

Plaintiff also filed an application for federal registration of the trademark ORIGINAL BEETLE with the United States Patent Office on October 26, 1971. The word "ORIGINAL" was disclaimed as a part of the trademark. The examiner notified plaintiff on April 21, 1972, that he had insufficient information to determine the question of registrability of the mark, and raised questions concerning whether the mark was unregistrable as either descriptive or deceptively misdescriptive, apparently because the lure in question resembled a natural insect or did not resemble a natural insect. Plaintiff did not respond to the examiner's request for additional information within six months, and the application was deemed abandoned.[8]

Plaintiff filed applications for state registration of the name BEETLE for fishing lures in Missouri, Illinois, and Minnesota which were approved by Missouri on June 20, 1969, under Registration No. 3856,[9] by Illinois on February 5, 1970, under Registra-

5. Pl. Ex. No. 28.

6. Pl. Ex. No. 13(a).

7. Pl. Ex. No. 1.

8. Def. Ex. No. 124.

9. Pl. Ex. No. 5.

tion No. 40,350,[10] and by Minnesota on August 2, 1972, under Registration No. 4409.[11]

### 2. *Appropriation and use by the defendants.*

Defendant Gapen Manufacturing Company, Inc. (hereinafter "Gapen Manufacturing"), is a Minnesota corporation, having its principal place of business in Big Lake, Minnesota. It also is and has been engaged in the manufacturing and sale of fishing lures.

Defendant Daniel G. Gapen (hereinafter "Gapen") is an individual residing at Big Lake, Minnesota. He is the president and principal stockholder of defendant Gapen Manufacturing. He markets the fishing lures manufactured by Gapen Manufacturing as a sole proprietor under the name "Gapen Tackle Company."

Defendant Gapen has been engaged in fishing and the fishing tackle business since he began tying flies for his father's fishing tackle business at the age of six. He has been actively engaged in the fishing tackle business as a sales representative, buyer, fishing guide, and businessman all his adult life.

In 1960, he began operating a fly-tying business under the name Gapen Fly Company. By 1970, the company was selling a full line of fishing lures and associated fishing equipment. The lures included flies, named "Muddler Minnow," "Wooly Worm," and "Cockatush," and jig-type lures with rubber or plastic bodies named "Hairy Worm," "Ugly Bug," and "Mousey." The name of the Gapen Fly Company was changed sometime prior to 1970 to the Gapen Tackle Company.

In 1970, Gapen received samples of molded plastic bodies from the Lisk Manufacturing Company of Greensboro, North Carolina, which were virtually identical to those used by plaintiff in manufacturing plaintiff's BEETLE fishing lures. The samples were listed in Lisk's supply catalogue as "beetle bodies." Gapen decided that the lure would be an attractive addition to his line of lures.

In the fall of 1970, Gapen began manufacture and sale of a jig with a plastic body which was indistinguishable in appearance from that marketed by plaintiff. The only difference is that the plastic bodies supplied by the Lisk Manufacturing Company had grooved simulated segmentation rings completely encircling the body, whereas the simulated segmentation rings on plaintiff's lure are confined to the underside of the body. The lure was offered in various sizes and colors, and was sold under the name BEETLE.

Since the fall of 1970, Gapen has marketed modified versions of his BEETLE lures under the names UGLY BEETLE, BEETLE PLUS, and UGLY BEETLE PLUS. The plastic bodies of his lures are substantially the same for each of the lures. However, the term "UGLY" is added when leg-like strands of rubber are incorporated with the body. The term "PLUS" is added when the lure is combined with a spinner. Gapen has also packaged and sold the plastic bodies used in manufacturing the lures as BEETLE BUG BODIES. These lures have been shipped into a number of states including Missouri.

In 1970 when defendant Gapen began the manufacture and sale of his jigs with a plastic body under the name of BEETLE, he had been aware for at least six months of plaintiff's prior use of the name BEETLE and BEETLE SPIN in connection with a virtually indistinguishable jig with a plastic body. Gapen testified that he believed he had a legal right to use the name BEETLE because he considered the name to be descriptive of the appearance of the lure.

Plaintiff learned of defendants' use of the name BEETLE in 1971. In September, 1971, and again in March, 1973, plaintiff, by letter, requested that defendants discontinue use of the name BEETLE. Defendants refused the request of the plaintiff to discontinue use of the name. As a result of the refusal this action ensued.

---

**10.** Pl. Ex. No. 6.

**11.** Pl. Ex. No. 7.

From the foregoing facts, it is found that plaintiff appropriated the name BEETLE for a lure consisting of a combination of a jig with a plastic body in 1964, and has used that name continuously in a nationwide market since that time. Because it did not begin until 1970, defendants' use of the name BEETLE for a substantially identical lure occurred long after plaintiff's appropriation and use of the name BEETLE for the same lure.

### B. Descriptiveness.

Natural beetles, and beetle larvae, have long been recognized as effective fishing baits.[12] One of the primary issues in this case is whether the jig with a plastic body manufactured and sold by plaintiff is similar in appearance to a natural beetle or beetle larva.

Plaintiff's BEETLE lure has a round head, varying in diameter from approximately three-sixteenths to one-quarter inch and varying in weight from one thirty-second to one-fourth ounce, from which protrudes the eye of the hook. A soft plastic elongated body, varying in diameter from approximately five-sixteenths to one-half inch, extends from the lead head down the shank of the hook to just beyond the initial curve of the bend where it splits to form two tails. The plastic body has semicircular grooved segmentation rings on its underside, and is smooth on top and upper sides. The lure varies in length from approximately one and one-half to three inches. It appears in several different colors, some marked with stripes, and has eye-like dots on the lead head.[13]

Defendants have contended that plaintiff's jig with a plastic body is similar in appearance both to the larva of several species of water beetles in the Dytiscidae Family of the Order Coleoptera of Insects, and to a combination of a beetle-larva body and the wings of a mature adult beetle. However, plaintiff has shown by a preponderance of the evidence that its BEETLE lure does not resemble a beetle in either the larva or adult stages.

First, plaintiff has proven that the lure does not entomologically resemble a natural beetle. Dr. Curtis W. Wingo, a professor of entomology at the University of Missouri at Columbia, testified that it was his expert opinion that the lure does not resemble an adult beetle, because it lacks a thorax and the hard, horny wings ordinarily found on a mature beetle, and also that it does not resemble a beetle larva. Rather, it was Dr. Wingo's opinion that the general appearance of the lure is somewhat similar to some of the segmented worms of the Plylum Annelida, especially the Class Hirudinea, which are commonly known as leeches.

Further, there was substantial credible evidence that consumers of fishing lures do not believe that plaintiff's lure is similar in appearance to a natural beetle. Dr. Carl E. Block, a professor of marketing at the University of Missouri at Columbia, conducted a survey for plaintiff to determine what plaintiff's lure looks like to purchasers of fishing lures. Dr. Block's assistants interviewed 500 persons in the Kansas City metropolitan area, and 499 persons in the Minneapolis, Minnesota, metropolitan area, selected randomly and who had purchased fishing lures in the past. Each person was shown one of nineteen BEETLE lures used in the survey, each different in color and form, and was asked: "What does this lure look like to you?" Only 4 percent responded that the lure looked like a beetle. Some or all of those so responding could have been fishermen who associated the name with plaintiff's BEETLE lure. Other responses were "don't know" (14 percent); "worm" (12.3 percent); "grasshopper" (10.1 percent); "bug" (9.0 percent); "fishing lure" (5.2 percent); "minnow" (4.3 percent); "fish" (2.9 percent); "dragonfly" (2.0 percent); "lure-like" (2.0 percent); and a variety of other responses.[14]

The person being interviewed was then asked: "Does this lure look like any kind of

12. Def. Ex. Nos. 10, 12, 13, 14, 25, and 27.

13. Pl. Ex. No. 9.

14. Pl. Ex. No. 49.

creature to you?" Sixty-one and four-tenths percent responded "yes," and 38.2 percent responded "no." Those who responded "yes," were then asked: "[W]hat creature does it look like?" The responses were widely varied including "grasshopper" (11.8 percent); "worm" (7.4 percent); "bug" (6.0 percent); "minnow" (3.8 percent); "worm-like" (2.3 percent); "fly" (1.8 percent); and a variety of less frequent responses. Only 1.7 percent responded that the lure look like a "beetle."[15] Association of the name BEETLE with plaintiff's BEETLE lure could have accounted for all or some of the responses of this 1.7 percent.

On the basis of his tabulation of the results of the survey, Dr. Block reasonably concluded that the lures were perceived to be many different things to those interviewed, and could not be characterized by any particular term such as a beetle. He further testified that the survey was scientifically valid, and that the results would not vary materially for other areas of the country both urban and rural.

Defendants conceded that Dr. Block was qualified to conduct the survey, but contend unpersuasively that the survey was defective in several respects.

■ Dr. Richard Alfred Hamilton, who is an assistant professor of marketing and statistics at the University of Missouri at Kansas City, testified that the survey was defective with respect to the geographical areas from which the persons interviewed were randomly selected; the method used to determine whether the person interviewed was a "fishing lure purchaser"; the use of different colors and sizes of lures by the interviewers rather than a single lure; the fact that the lures were not mounted on display cards; and the nature of the questions asked. Defendants, however, did not conduct a survey using the techniques they contend are proper, and the only evidence that the results of a survey so conducted would differ from those obtained by plaintiff is Dr. Hamilton's expert opinion. It is found that defendants' contentions concerning the validity of plaintiff's survey are not substantially supported by persuasive evidence, and that plaintiff's survey is shown by at least a preponderance of the evidence to be reliable.

Finally, experienced tackle dealers Raymond Lee Fincke and Randall Glen Hinkle, former tackle dealer David Paul Jadwin, and outdoor sports writers Timothy B. Renken of the *St. Louis Post Dispatch* newspaper and Colonel David F. Harbour, a contributor to *Sports Afield* and *Field and Stream* magazines, testified in behalf of plaintiff that, in their opinions, plaintiff's BEETLE lure does not resemble a natural beetle. These witnesses are qualified to give an opinion based on their fishing and sporting business experience.

On the basis of the foregoing evidence, and independent examination of the plaintiff's BEETLE lures, it is found that these lures are not similar in appearance to a natural beetle in either the larval or adult stage.

C. *Secondary Meaning.*

Plaintiff contends that even if the name BEETLE is considered descriptive, plaintiff's extensive sales, advertising and promotion of its BEETLE lures has caused the BEETLE name to become favorably known to the trade and public as signifying a product of plaintiff. Although the evidence is in conflict, it is found that plaintiff has failed to prove this contention by a preponderance of the evidence.

The evidence is uncontroverted that plaintiff has advertised and promoted its BEETLE lures in both print and broadcast media reaching many parts of the nation. See Part I(A), *supra.* The important issue, however, is the effect of that advertising and promotion on those knowledgeable in the trade and consumers in the marketplace.

Plaintiff has presented substantial and credible testimony that plaintiff's BEETLE name has become known by fishing tackle dealers and manufacturers, and outdoor

15. *Id.*

sports writers, in the Missouri and Kansas area as signifying a product manufactured and sold by plaintiff.[16] Plaintiff also presented some evidence of identification of the name BEETLE with plaintiff's business by outdoor sports writers whose articles reach a national market [17] and local markets outside the Missouri-Kansas area.[18] However, plaintiff presented no survey evidence that *consumers* in either the Missouri-Kansas or national markets identify the name BEETLE with plaintiff. The only substantial evidence of consumer identification of the name with plaintiff is over four hundred letters from dealers and consumers in thirty-nine states to plaintiff inquiring about the BEETLE lure.[19] These letters, many of which were prompted by the articles by Colonel David F. Harbour appearing in *Sports Afield* cannot be considered evidence that the writers thereof identified the name BEETLE *solely* with plaintiff's business.

There was also substantial evidence that the name BEETLE has been used by a number of companies in marketing lures both similar and dissimilar to plaintiff's BEETLE lure. See Part I(E), *infra.* Despite plaintiff's vigorous efforts to enforce its claimed exclusive right to use the name for combination jig and plastic body lures, the evidence of third-party usage demonstrates a possibility that consumers might identify the name BEETLE with businesses other than plaintiff's.

In the absence of substantial evidence of consumer identification of the name BEETLE solely with plaintiff, and in light of third-party usage of the name, it is found that plaintiff has failed to prove that as a result of its advertising, consumers have come to identify the name BEETLE solely with plaintiff's business.

### D. *"Deceptive Misdescription."*

Defendants have asserted that the name BEETLE used in connection with plaintiff's

combination jig with a plastic body is "deceptively misdescriptive." They are apparently contending that if the name BEETLE is not descriptive, it deceives the purchaser of the lure into believing that the lure looks like a natural beetle. The evidence does not support this contention.

Plaintiff markets its BEETLE lures on cards to which the lures are attached individually enclosed in a clear plastic envelope.[20] A potential lure purchaser is able clearly to observe the appearance of the lure before purchase. He is not deceived into believing that the lure resembles a natural beetle by use of the name BEETLE in connection with packaging which obscures the true appearance of the lure.

Defendants presented no substantial evidence that lure purchasers are misled into believing that plaintiff's lure resembles a natural beetle by use of the name BEETLE. The manner of the marketing of the lure, combined with the clear absence of resemblance between the lure and a natural beetle or a beetle larva, see Part I(B), *supra*, support a finding that the term BEETLE is not "deceptively misdescriptive" is applied to plaintiff's BEETLE lure.

### E. *Third Party Usage.*

Defendants presented substantial evidence that other fishing lure manufacturers have used the name "BEETLE" in connection with both lures similar to plaintiff's combination jig with a plastic body and lures bearing no resemblance to plaintiff's BEETLE lures. However, plaintiff has proven that it has taken effective action to prevent continued use of the name BEETLE by other manufacturers in connection with similar lures, and that other lures bearing the name BEETLE are sufficiently dissimilar to plaintiff's plastic-bodied jig that the distinctiveness of plaintiff's usage

---

**16.** E.G. Pl. Ex. No. 27.

**17.** Pl. Ex. Nos. 22, 23, 24, 26.

**18.** Pl. Ex. No. 19.

**19.** Pl. Ex. No. 29.

**20.** Pl. Ex. No. 9.

of the name BEETLE is not thereby impaired.

Plaintiff does not own or claim a patent of the design of its BEETLE lure [21] and other companies are not barred from manufacturing and selling a similar lure.

Combination jigs with plastic bodies similar in appearance to plaintiff's have been marketed using the name BEETLE by the following companies under the following names: [22]

| | | |
|---|---|---|
| * 1. | Four Rivers Tackle Company | "Glow in the Dark Beetle Jig" |
| 2. | Ken Tool Company | "Beetle Jig" |
| * 3. | Great Southern Corp. | "Super Beetle" |
| 4. | American Luresmith, Co. | "Fiddlers Spin: A Proved Beetle Type Bait" |
| * 5. | B & B Tackle Co. | "Dan – Dee Beetle" |
| * 6. | Dragonfly Co. | "Beetle Bug" |
| * 7. | Knight Mfg. Co. | "Knight Original Beetle II" |
| * 8. | M & F Mfg. Co. | "Beetle Molds" |
| 9. | Jobbers Supply Co. | "Beetle" |
| 10. | Northwoods-Tackle Sales Division | "Beetles" |
| 11. | Mercantile Sales | "Split-tail life-like Beetle Jigs" |
| * 12. | Charles J. Johnson | "Beatle", "Beatle Bomb" |
| * 13. | David's | "Beetle Bomb Spin" |
| * 14. | Lisk Fly Mfg. Co. | "Beetle" |
| * 15. | Custom Tackle Mfg. Co. | "Better Beetle" |
| * 16. | J & N Tackle Mfg. Co. | "Beetle", "Beetle Spin", "Beetle Spinner", "Action Beetle" |
| * 17. | L & R Sales | "Action Beetle" |
| * 18. | Bain Mfg. Co. | "Beetle", "Beetle Spin", "Beetle Tails" |
| * 19. | Newland Lure Co. | "Beetle", "Beetle Spin" |
| * 20. | Noll's Lures | "Longtail Beetle", "Splittail Beetle", "Mini-Beetle", "Large Beetle" |
| * 21. | Mercer Fishing Tackle, Inc. | "Spin Beetle", "Beetle Pak", "Beetle Jig" |
| * 22. | Herters, Inc. | "Beetle" |

However, plaintiff advised each of the companies identified above by an asterisk (*) of its claim to exclusive trademark rights in the name BEETLE for the combination jig with a plastic body, and plaintiff requested each of those companies to discontinue use of the word BEETLE. The companies identified above by an asterisk in parentheses (*) have voluntarily agreed to discontinue such use.

A number of companies have marketed fishing lures which are wholly unlike plaintiff's BEETLE lures under the name BEETLE.[23] These lures generally closely resemble natural beetles in appearance. Therefore the name BEETLE is descriptive when used in relation to those lures. Because such usage is considered descriptive, it does not materially impair the distinctiveness of plaintiff's fanciful use of the name on its BEETLE lure, which does not resemble a beetle in any form.

Because plaintiff has vigorously enforced its claimed trademark rights in the name BEETLE against use of the term by other companies marketing similar lures, and because descriptive use of the term in connection with dissimilar lures does not impair the distinctiveness of plaintiff's fanciful use of the name, it is found that third-party usage has not destroyed the distinctiveness of plaintiff's use of the name BEETLE for its BEETLE lure.

### F. Likelihood of Confusion.

Defendants' use of the word BEETLE for their lures consisting of a combination jig with a plastic body clearly creates a likelihood of confusion among consumers of plaintiff's BEETLE mark and defendants' use of BEETLE. Although defendants' combinations of the name BEETLE with other words such as UGLY BEETLE and BEETLE PLUS are not identical to plaintiff's combinations of SUPER BEETLE, BEETLE SPIN and ORIGINAL BEETLE, they are sufficiently similar to create a

---

21. Plaintiff has, however, patented a device for anchoring the soft plastic body securely to the hook. Def. Ex. No. 125.

22. Pl. Ex. No. 30; Def. Ex. Nos. 57–75.

23. Def. Ex. Nos. 26, 34–37, 40–44, 47–49, 51–53, 55, and 56.

likelihood of confusion. Consumers may well be misled into believing that lures appearing under those names are merely new models of plaintiff's lures.

### G. *Unfair Competition.*

In addition to the confusingly similar names adopted by defendants, other evidence was presented by plaintiff which supports a finding that defendants marketed their BEETLE lures in such a manner that consumers have been, and will inevitably be, misled into believing that defendants' lures are actually those produced by plaintiff.

Defendants marketed their lures in a manner quite similar to that used by plaintiff. Both packaged the lures individually in clear plastic envelopes attached to display cards containing from one to twenty-four lures. The most prominent printed matter on the cards of both is the name of the lure printed at the top. Both plaintiff's and defendants' display cards have a figurative design related to fishing as a background for the lures, although the designs are not exactly the same. The only substantial difference is the word "Gapen's" appearing at the top of defendants' cards in contrast to the name "Bass Buster" appearing at the top of plaintiff's cards.[24]

Further, the printed advertising used by both parties is similar. The name of the lure is clearly the most dominant feature of the advertisements, while the names of the manufacturer appear in less prominent print.[25]

Defendants contend that consumers are not misled into believing that defendants' lure is plaintiff's because of the use of the names "Gapen's" and "Bass Buster" on the display cards of defendants and plaintiff respectively. However, the appearance of these names is dominated by the lure name, and is unlikely to appreciably prevent the "passing off" of defendants' lures for plaintiff's.

Because of the confusingly similar names, and the similar marketing devices used by defendants, it is concluded that consumers have been and will be misled regarding the source of defendants' lures.

## II. *Conclusions of Law.*

### A. *Applicable Law.*

■ Plaintiff has asserted both federal and common law trademark infringement and unfair competition claims. Although federal law applies to the federal trademark infringement and unfair competition claims, state law applies to plaintiff's common law claims. *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260 (5th Cir. 1975); *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1270 n. 5 (2nd Cir. 1974); *Artype, Inc. v. Zappulla*, 228 F.2d 695 (2nd Cir. 1956).

■ Review of the few leading Missouri trademark decisions indicates that Missouri applies generally recognized fundamental principles of trademark law. *See, e. g.: Missouri Federation of the Blind v. National Federation of Blind of Missouri*, 505 S.W.2d 1 (Mo.App.1973); *Temperato v. La-Brot*, 358 S.W.2d 106 (Mo.App.1962); *Better Business Bureau, Etc. v. Chappell*, 307 S.W.2d 510 (Mo.App.1957); *Bagby v. Blackwell*, 240 Mo.App. 574, 211 S.W.2d 69 (1948). Because Missouri does not have a well developed body of trademark caselaw, fundamental trademark principles will be applied to the common law claims.

### B. *Trademark Rights.*

■ A trademark is generally any word, name, symbol or device adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others. *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 926 (8th Cir. 1967); 3 Callmann, *The Law of Unfair Competition, Trademarks, and Monopolies* [hereinafter "*Callmann*"], Section 65 (3rd ed. 1969).

---

**24.** Compare: Pl. Ex. No. 9, *with*, Pl. Ex. No. 33 and Def. Ex. No. 2–9.

**25.** Pl. Ex. Nos. 13, 35.

■ The exclusive right to use a trademark is established by prior appropriation and use of the mark in connection with a particular business. *Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co.*, 516 F.2d 846, 850 (8th Cir. 1975), *cert. denied*, 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975); *Electronic Communications, Inc. v. Electronic Components for Industry Co.*, 443 F.2d 487, 492 (8th Cir. 1971); *Sweetarts v. Sunline, Inc., supra*, 380 F.2d at 926; 3 *Callmann*, Section 76.1. Trademark rights are not acquired by federal or state registration of the marks, and the plaintiff has the burden of proving prior appropriation and use. *Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co., supra.*[26]

■ Plaintiff has proven by uncontroverted evidence that in 1964 it appropriated the name BEETLE for its lure consisting of a combination jig with a plastic body and has used the name BEETLE continuously since that time in marketing its lures nationally. Plaintiff has further proven by uncontroverted evidence that it appropriated the name SUPER BEETLE in 1965, the name BEETLE SPIN in 1968 or 1969, and the name ORIGINAL BEETLE in 1971 or 1972 for modified versions of its lure. Plaintiff has used these names continuously in a national market since those times. Therefore, plaintiff's appropriation and use of the name BEETLE was prior to that of defendants', who first began use of the name BEETLE for a virtually identical lure in 1970. Therefore, plaintiff has acquired trademark rights in that term unless the claimed trademark is invalid on other grounds.

■ Defendants' principal contention is that the name BEETLE is merely descriptive of the jig with a plastic body. A word or phrase which is primarily descriptive of the qualities or characteristic of the article to which it is attached cannot ordinarily be claimed as a federal or common law trademark. Section 1052(e), Title 15, United States Code; *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938); *Delaware and Hudson Canal Co. v. Clark*, 80 U.S. (13 Wall.) 311, 20 L.Ed. 581 (1971); *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 378 (7th Cir. 1976); *Bada Co. v. Montgomery Ward & Co.*, 426 F.2d 8, 11 (9th Cir. 1970); 3 *Callmann*, Section 70.1, *et seq.* However, a trademark which is not descriptive, but arbitrary and fanciful or merely suggestive, is valid. *Union Carbide Corp. v. Ever-Ready, Inc., supra; Dietene Company v. Dietrim Company*, 225 F.2d 239 (8th Cir. 1955).

■ Plaintiff has proven by a preponderance of the physical and opinion evidence, including the opinion evidence of Dr. Wingo, that its lure consisting of a combination jig with a plastic body is not entomologically similar in appearance to either a natural beetle larva or a mature adult beetle. Plaintiff has further proven through Dr. Block's survey that fishing lure purchasers do not believe that the lure is similar in appearance to a natural beetle. Finally, cumulative testimony by fishing tackle dealers and outdoor sports writers, who are qualified to express an opinion based on their knowledge of fishing, established that the lure does not resemble a natural beetle. The results of the survey and testimony by dealers and writers is entitled to great weight because the controlling factor on the issue of descriptiveness is what the ultimate consumers, served by the dealers and writers, believe to be descriptive. *Bada Company v. Montgomery Ward & Co., supra; Roux Laboratories, Inc. v. Clairol, Inc.*, 427 F.2d 823, 57 CCPA 1173 (1970); *Blisscraft of Hollywood v. United Plastics Co.*, 294 F.2d 694 (2nd Cir. 1961); *Ralston Purina Company v. Thomas J. Lipton, Inc.*, 341

---

**26.** Plaintiff clearly has the burden of proving the validity of its common law trademarks. Because it is concluded that plaintiff has proven the validity of its trademarks by a preponderance of the evidence, it is unnecessary to determine what effect plaintiff's federal registration of the mark BEETLE SPIN has on the allocation of the burden of proof with respect to that mark, or what weight should be given to that registration. *Compare*: Sections 1057(b) and 1115(a), Title 15, United States Code, *with*, *Wrist-Rocket Mfg. Co. v. Saunders Archery Co., supra*, 516 F.2d at 850.

F.Supp. 129 (S.D.N.Y.1972); 3 *Callmann*, Section 70.2 (Supp.).

It is concluded that the name BEETLE does not describe any quality or characteristic of plaintiff's lure consisting of a combination jig and plastic body and, while it may be suggestive, it is not descriptive.[27]

■ Defendants have relied heavily on *Application of True Temper Corp.*, 219 F.2d 957, 42 CCPA 790 (1955), and *James Heddon's Sons v. Millsite Steel & Wire Works*, 35 F.Supp. 169 (E.D.Mich.1940), for the broad proposition that the name of a natural bait for fish can never be appropriated as a trademark for an artificial fishing lure. In *Application of True Temper Corp., supra*, trademark protection was denied the name "Crippled Shad" for a fishing lure which simulated the action of a crippled shad, because the name was found to be descriptive of the action of the lure. In *James Heddon's Sons v. Millsite Steel & Wire Works, supra*, it was held that trademark rights could not be acquired in the name "Head-On-Basser," or "Wounded Minnow," because those names were found descriptive of respectively a lure used to catch bass, and the action of the lure. Although there is some language in these cases which, if taken out of context, generally supports defendants' position, the decisions in both are based primarily upon the descriptiveness of the respective names. *Cf.: Water Gremlin Company v. Ideal Fishing Float Co., Inc.*, 401 F.Supp. 809 (D.Minn.1975), denying trademark protection to the name "Rubbercor" for a lead sinker with a rubber center. While these cases are distinguishable from this case, to the extent the cases support the broad proposition asserted by defendants, they are not considered controlling because they are inconsistent with the general rule that trademark rights can be acquired in a term which is fanciful when applied to the particular article in question, even though the term would be descriptive if applied to another article. *Artype, Inc. v. Zappulla, supra; Douglas Laboratories Corp. v. Copper Tan*, 210 F.2d 453 (2nd Cir. 1954); *Celanese Corp. v. E. I. Du Pont De Nemours & Co.*, 154 F.2d 146, 33 CCPA 948 (1946), 3 *Callmann*, Section 71.1(e). The issue is whether plaintiff's lure is similar in appearance to a natural beetle in any form, and not simply whether natural beetles are used for fishing bait. The issue of descriptiveness of a name can be determined only in relation to the article to which the name is applied.

In view of the conclusion that the name BEETLE is not descriptive, it is unnecessary to determine whether the name has acquired a secondary meaning. Nevertheless, in the interest of a full determination of the issues for purpose of appeal, a determination of the issue of secondary meaning will be made.

■ Exclusive rights to a mark, which is found or conceded to be descriptive may nevertheless be legally acquired if, through advertising and exclusive use, the mark has come to mean in the public mind that the article to which it is attached was produced or sold by the party claiming the exclusive right to use the mark, rather than by others. *Coca-Cola Co. v. Koke Co.*, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189 (1920); *Union Carbide Corp. v. Ever-Ready, Inc., supra; American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3 (5th Cir. 1974); *Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293 (9th Cir. 1971); *Shoppers Fair of Arkansas, Inc. v. Sanders Co.*, 328 F.2d 496 (8th Cir. 1964); 3 *Callmann*, Section 77.1, et seq. *See also: Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210, (8th Cir. 1976). The issue is whether the public associates the

---

27. Defendants also offered evidence that a lure manufacturer other than plaintiff recently applied for federal registration of the name SUPER BEETLE for a "fishing lure", and that an Examiner for the United States Patent Office required the applicant to disclaim the word BEETLE as descriptive. However, this evidence does not require a contrary conclusion on the issue of descriptiveness in this action for two reasons. First, there is no evidence that the applicant's fishing lure resembled plaintiff's lure. Second, even if the lures were identical, the opinion of the Examiner is not controlling, and does not outweigh the substantial evidence of non-descriptiveness presented by plaintiff in this case.

article to which the mark is attached with a single source. *Kellogg Co. v. National Biscuit Co., supra; Volkswagenwerk Aktiengesellschaft v. Rickard*, 492 F.2d 474 (5th Cir. 1974).

Plaintiff contends that its extensive advertising and promotion has caused the name BEETLE to acquire a secondary meaning signifying plaintiff alone as the source in the public mind. It has relied primarily on the evidence relating to its promotional efforts, and testimony by persons with specialized knowledge of the fishing lure market. However, while advertising expenditures are a factor to be considered,

> "[i]n issue is the success of this effort. The chief inquiry is directed toward purchasers' attitudes toward a mark." *Union Carbide Corp. v. Ever-Ready, Inc., supra*, 531 F.2d at 380.

3 *Callmann*, Section 77.3.

Plaintiff has presented no substantial evidence whether *consumers* primarily associate the name BEETLE with it, rather than with the lure it produces. Defendants have presented sufficient evidence of third-party usage to show the existence of a significant possibility that consumers may associate the name BEETLE with companies other than plaintiff. *Carter-Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970). It is concluded that plaintiff has failed to prove, and defendants have affirmatively disproved, the existence of secondary meaning.

Defendants further contend that trademark protection should be denied the name BEETLE because it is "deceptively misdescriptive." A deceptively misdescriptive mark is made unregisterable by Section 1052(e), Title 15, United States Code. *Application of Automatic Radio Mfg. Co.*, 404 F.2d 1391, 56 CCPA 817 (1969); *R. Neumann & Co. v. Bon-Ton Auto Upholstery, Inc.*, 326 F.2d 799, 51 CCPA 934 (1964); *Williamson-Dickie Mfg. Co. v. Davis Mfg. Co.*, 251 F.2d 924 (3rd Cir. 1958). It is assumed for purposes of this decision that such a mark cannot become a valid common law trademark.

From the conclusion that the name BEETLE is not descriptive, it logically follows that the name may be to some extent "misdescriptive." However, "[t]he proscription is not against misdescriptive terms unless they are deceptive." *Application of Automatic Radio Mfg. Co., supra*, 404 F.2d at 1396. Because the lure is clearly visible to a prospective purchaser, who is able to determine for himself what the appearance of the lure is, it is concluded that the name BEETLE does not deceive the purchaser into believing that the lure resembles a natural beetle. *Compare: R. Neumann & Co. v. Bon-Ton Auto Upholstery, Inc., supra* [name *VYNANYDE* as applied to artificial leather considered deceptive because it suggests real leather].

Finally, defendant contends that plaintiff does not have valid trademark rights in the name BEETLE because the distinctiveness of the name has been destroyed by widespread third-party usage of the name in connection with fishing lures both similar and dissimilar in appearance to plaintiff's plastic-bodied jig. A trademark becomes a common mark in which no exclusive rights can be obtained if, by reason of constant use by others, the mark's original claim to distinctiveness has been destroyed, 3 *Callmann*, Section 74.1.

Although a number of companies have marketed lures similar and dissimilar to plaintiff's under the name BEETLE or under a name including the word BEETLE, plaintiff has proven that it has diligently and effectively asserted its claim to the exclusive right to use the name BEETLE in connection with similar lures consisting of a jig with a plastic body against its competitors. Many of the competitors have voluntarily ceased use of the name BEETLE in response to plaintiff's request. *Cf.: E.I. DuPont de Nemours & Co. v. Yoshida International, Inc.*, 393 F.Supp. 502, 528 (E.D.N.Y.1975).

Further, use of the name BEETLE in connection with dissimilar lures as a descriptive term does not weaken the substantial exclusivity of the mark as a fanciful

**160**

name for plaintiff's lure consisting of a combination jig and plastic body. *La Maur, Inc. v. Alberto-Culver Co.,* 179 U.S.P.Q. 607, 615 (D.Minn.1973) *affirmed per curiam,* 496 F.2d 618 (1974). Because plaintiff has diligently attempted to maintain the distinctiveness of its use of the name BEETLE in connection to similar lures, and has achieved substantial success in the attempt, it is concluded that the distinctiveness of the name has not been destroyed by third-party usage and accordingly that the name has not become a common mark.

For the foregoing reasons, it is concluded that plaintiff has a valid statutory trademark right in the name BEETLE SPIN and common law trademark rights in the names BEETLE, SUPER BEETLE, BEETLE SPIN and ORIGINAL BEETLE for its lure consisting of a combination jig with a plastic body. Defendants' counterclaim for cancellation of plaintiff's federal and state trademark registrations will therefore be denied.

### C. *Trademark Infringement.*

In determining the issue of trademark infringement, the test applied is whether defendants' use of a mark similar to plaintiff's creates a likelihood of confusion among the consumers. *Electronics Communications Inc. v. Electronic Components For Industry Co., supra; Sweetarts v. Sunline, Inc., supra; Dietene Company v. Dietrim Company, supra;* 3 *Callmann,* Section 80, et seq. Plaintiff need not show proof of actual confusion. *Sweetarts v. Sunline, Inc., supra.*

Defendants' use of the name BEETLE for lures consisting of a combination jig with a plastic body, either separately or in the forms BEETLE PLUS or UGLY BEETLE, is likely to create confusion with plaintiff's trademarks BEETLE, BEETLE SPIN, and SUPER BEETLE. The most prominent word in the names is the word BEETLE which appears in both. The use of different modifying words is not considered sufficient to dispel the likelihood of confusion.

Further, defendants' use of the name "Gapen" and plaintiff's use of the name "Bass Buster" on the BEETLE labels and advertising does not diminish the likelihood of confusion. *A. T. Cross Co. v. Jonathan Bradley Pens, Inc.,* 470 F.2d 689, 692 (2nd Cir. 1972); *W. E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 661 (2nd Cir. 1970). *See also: Truck Equipment Service Company v. Fruehauf Corp., supra.* It is therefore concluded that use by defendants of the names BEETLE, UGLY BEETLE and BEETLE PLUS infringes upon plaintiff's statutory and common law trademark rights in the name BEETLE for a lure consisting of a combination jig with a plastic body.

### D. *Unfair Competition.*

Plaintiff has asserted claims of unfair competition under both Section 1125, Title 15, United States Code, and the common law. Plaintiff alleges that defendants' adoption of confusingly similar names and marketing devices for their lures results in a "passing off" of defendants' lures for those produced by plaintiff.

The essence of the law for unfair competition is fair play. 1 *Callmann,* Section 1. A claim for unfair competition under both the statute and common law is established by showing that one party is "passing off" his product as that of another so that the public is deceived regarding the source of the goods. *Boston Pro. Hockey Ass'n v. Dallas Cap & E. Mfg., Inc.,* 510 F.2d 1004 (5th Cir. 1975); *National Lampoon, Inc. v. American Broadcasting Companies, Inc.,* 376 F.Supp. 733 (S.D.N.Y.1974), *affirmed,* 497 F.2d 1343 (2nd Cir. 1974); *Volkswagenwerk Aktiengesellschaft v. Rickard, supra; Water Gremlin Co. v. Ideal Fishing Float Co., supra.* Proof of deceitful intent is not required because intent is not a necessary element of the tort of unfair competition. *Volkswagenwerk Aktiengesellschaft v. Rickard, supra.*

As factually found, defendants' adoption of the names BEETLE, UGLY BEETLE and BEETLE PLUS, and their use of marketing devices similar to those of plaintiff, rendered it inevitable that some

consumers would be misled into purchasing defendants' lures when they actually intended to purchase those produced by plaintiff. The only substantial attempts made by defendants to distinguish their lures from those of plaintiff were (1) extension of segmentation rings completely around the plastic body of the lure; (2) use of the words UGLY and PLUS as modifiers of the name BEETLE; and (3) use of the name "Gapen's" at the top of the display cards and in printed advertisements. The first difference is not substantial, and the latter two differences are not considered to be effective to prevent "passing off" for the reason stated in Parts I(D) and (E), *supra,* and Part II(C), *supra.*

There is no evidence that defendants actually intended to pass their lures off as plaintiff's lures. But, as stated above, intent is not an element of unfair competition. Because "passing off" resulted from defendants' choice of names and marketing methods, it is concluded that defendants unfairly competed for plaintiff's business.

### III. *Relief.*

Plaintiff seeks both an injunction against defendants' continued use of the name BEETLE, separately and in the forms UGLY BEETLE and BEETLE PLUS, for plastic-bodied jigs, and an accounting.

#### A. *Injunction.*

 Plaintiff has proven that defendants' acts of trademark infringement and unfair competition will continue to cause confusion among consumers unless enjoined. It is therefore entitled to an injunction.

 The parties have not fully addressed the issue of the scope of the injunctive relief. The scope of injunctive relief which may be granted is limited to the geographic area of plaintiff's actual market penetration. *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916); *Sweetarts v. Sunline, Inc.,* 436 F.2d 705 (8th Cir. 1971). *See also: Truck Equipment Service Company v. Fruehauf Corp., supra.* Plaintiff has presented evidence of nationwide sales of its BEETLE lures. Defendants have not contended that the scope of injunctive relief, if appropriate, should be limited to a particular geographical area. Accordingly injunctive relief will be granted on a nationwide basis.

#### B. *Accounting.*

 Plaintiff also seeks an accounting of defendants' profits derived from defendants' use of the trademark BEETLE, separately and in the forms BEETLE PLUS and UGLY BEETLE. An accounting is a form of equitable relief and does not follow as a matter of course upon the mere showing of trademark infringement. "An accounting will be denied in a trademark infringement action where an injunction will satisfy the equities of the case." *Sweetarts v. Sunline, Inc.,* 436 F.2d 705, 712 (8th Cir. 1971). Because plaintiff has proven the probability that defendants' trademark infringement and marketing techniques resulted in some "passing off," and lost sales as a result, plaintiff is entitled to an accounting for profits wrongfully derived by defendants. Further an accounting is required in order to deter similar unfair competition by defendants and others. *Truck Equipment Service Co. v. Fruehauf Corp., supra; W. E. Bassett Co. v. Revlon, Inc., supra.*

 The burden is on defendants to prove that liability should not be imposed for all profits derived from sales of their BEETLE lures. *Mishawaka R. & W. Mfg. Co. v. S. S. Kresge Co.,* 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942). However, defendants presented no substantial evidence that any portion of their profits are " . . . demonstrably not attributable to the unlawful use of [plaintiff's] mark." *Id.,* 316 U.S. at 206, 62 S.Ct. at 1024, 86 L.Ed. 1385. In the absence of such evidence, plaintiff is entitled to all of defendants' profits on the lures labeled BEETLE, BEETLE PLUS and UGLY BEETLE. *Id.* If the parties are unable to reach agreement on the amount of profits, a judicial determination will be made.

■ ■ Finally, plaintiff seeks attorneys fees. Attorneys fees are not recoverable in federal trademark infringement actions under the Lanham Act. *Fleischmann v. Maier Brewing Co.,* 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). Attorneys fees will not be awarded on the basis of plaintiff's common law claims because defendants acted out of a good faith, but legally incorrect, belief that plaintiff could not acquire valid trademark rights in the name BEETLE.

For the foregoing reasons, it is therefore

ORDERED and. ADJUDGED that defendants be, and they are hereby, perpetually enjoined and restrained from using the names BEETLE, UGLY BEETLE, and BEETLE PLUS or other combinations containing the name BEETLE for fishing lures consisting of a combination jig with a plastic body within the United States. It is further

ORDERED and ADJUDGED that defendants be, and they are hereby directed to account to plaintiff for all profits derived from their sale of fishing lures consisting of a combination jig with a plastic body under the names BEETLE, UGLY BEETLE, and BEETLE PLUS. If the parties are unable to agree on the amount of defendants' profits, notice of the nature of the disagreement should be filed in writing and a judicial determination of the disputed issues will be made. It is further

ORDERED and ADJUDGED that plaintiff's prayer for attorneys fees be, and it is hereby, denied. It is further

ORDERED and ADJUDGED that defendants be, and they are hereby, denied all relief prayed for in the counterclaim.