758 F.Supp. 512 (1991)
GILBERT/ROBINSON, INC., Plaintiff,
v.
CARRIE BEVERAGE-MISSOURI, INC., and Carrie Beverage, Inc., Defendants.
No. 85-2471 C (5).
United States District Court, E.D. Missouri, E.D.
February 28, 1991.
*513 *514 *515 *516 *517 David C. Hilliard, John Bostjancich, Pattishall, McAuliffe & Hofstetter, Chicago, Ill., Thomas C. Walsh, St. Louis, Mo., for plaintiff.
Allan & Malone, James F. Malone, St. Louis, Mo., Rogers, Howell, Moore & Haferkamp, Richard E. Haferkamp, Clayton, Mo., for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff Gilbert/Robinson, owner of HOULIHAN'S restaurants, initiated this action alleging service mark infringement, unfair competition and dilution based on defendants Carrie Beverage-Missouri, Inc. and Carrie Beverage Inc.'s (Carrie Beverage or defendants) use of the service mark MIKE HOULIHAN'S on their bars. Plaintiff's complaint was tried before this Court sitting without a jury and the Court, having considered the pleadings, the testimony of the witnesses, the documents in evidence and the stipulation of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52.

I. FINDINGS OF FACT
Plaintiff Gilbert/Robinson, Inc. is a Delaware Corporation with its principal place of business in Kansas City, Missouri. Defendant Carrie Beverage-Missouri, Inc. is a Missouri corporation with its principal place of business in St. Louis, Missouri. Defendant Carrie Beverage, Inc. is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin.
On October 16, 1985, plaintiff filed its complaint alleging service mark infringement, unfair competition and dilution. In its complaint, plaintiff alleged jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a)-(b). Federal jurisdiction was predicated on plaintiff's claimed ownership of federal service mark registrations issued to plaintiff by the United States Patent and Trademark Office for the marks HOULIHAN'S OLD PLACE as Reg. No. 1,050,344 and HOULIHAN'S OLD PLACE with design as Reg. No. 1,130,582.
At the time of the filing of plaintiff's complaint Penn 4743 Corp. was a Missouri corporation in good standing. Penn 4743 Corp. owned and operated all of the HOULIHAN'S and HOULIHAN'S OLD PLACE restaurants in the State of Missouri at the time of the filing of plaintiff's complaint. Penn 4743 was a subsidiary corporation of *518 plaintiff, and plaintiff owned 100% of Penn 4743's stock. Penn 4743 was not named as a party to this action.
Together with its federal claims brought under the Lanham Act, plaintiff also asserted actions for service mark infringement and dilution under § 417.005 and § 417.061, R.S.Mo., and for unfair competition under the common law of the State of Missouri.
In response to plaintiff's complaint, defendants filed an answer asserting various affirmative defenses, including an allegation that plaintiff had procured its federal service mark registrations by fraud upon the United States Patent and Trademark Office, and that plaintiff was fraudulently using the service mark HOULIHAN'S alone with an encircled "R", the statutory symbol of a federal registration, when it did not own a federal registration for that service mark.
Defendants also filed counterclaims against plaintiff, seeking to have plaintiff's service mark registrations cancelled. Further, defendants were seeking damages as a result of plaintiff's use of its alleged fraudulent federal registrations, plaintiff's alleged acts of unfair competition based on its use of fraudulent service mark registrations, and plaintiff's fraudulent use of the service mark HOULIHAN'S with an encircled "R."
In an order dated January 13, 1987, this Court bifurcated the action into two proceedings. Defendants' counterclaims were to be tried to a jury first. Then plaintiff's main claim was to be tried to the Court.
On September 25, 1987, a jury rendered a special verdict, finding that plaintiff's federal service mark registrations for HOULIHAN'S OLD PLACE and HOULIHAN'S OLD PLACE with design had been procured by fraud and that plaintiff's use of those registrations and its use of the service mark HOULIHAN'S with an encircled "R" constituted fraudulent acts of unfair competition against defendants and the consuming public. Pursuant to the jury's special verdict, this Court entered judgment in favor of defendant Carrie Beverage-Missouri, Inc. and against plaintiff in the amount of $100,000.00 in compensatory damages and $1 million in punitive damages. The Court further entered judgment in favor of defendant Carrie Beverage, Inc., and against plaintiff in the amount of $1 million in compensatory damages and $1 million in punitive damages for a total verdict of $3.1 million.
As a result of the jury's verdict, defendants moved for summary judgment based on plaintiff's unclean hands in asserting federal jurisdiction of its claims based on its fraudulent federal service mark registrations and because plaintiff had joined its Missouri state claims in the same action with plaintiff's fraudulent Lanham Act claims. This Court entered summary judgment on August 5, 1988 in favor of defendants and against plaintiff on plaintiff's Lanham Act claims on the basis of plaintiff's unclean hands. This Court, however, elected not to dismiss plaintiff's Missouri state law claims, retaining jurisdiction over those claims despite the fact that a federal claim no longer remained.
Immediately prior to the non-jury trial, defendants moved for summary judgment of the state law claims contending that the jury verdict collaterally estopped all issues raised in the non-jury trial. Particularly, the jury concluded in its verdict that defendants did not intentionally infringe on plaintiff's mark. The jury specifically found, by rejecting plaintiff's affirmative defense set out in Instruction 19, that defendants have not been aware of any likelihood of confusion caused by their use of MIKE HOULIHAN'S because of plaintiff's prior use of its HOULIHAN'S, HOULIHAN'S with design and HOULIHAN'S OLD PLACE marks. Defendants adopted their MIKE HOULIHAN'S mark without any intent or attempt to trade on any good will established by plaintiff in its mark HOULIHAN'S OLD PLACE or HOULIHAN'S. Thus, plaintiff's complaint of trademark infringement could not stand.
This Court denied defendants' motion for summary judgment because, as the law is clear, intent to infringe is not a necessary element of trademark infringement. It is but one element of the claim. Thus, even *519 if defendants did not have the intent to infringe upon plaintiff's marks, defendants' use of the mark MIKE HOULIHAN'S still could have infringed upon those marks.
In April 1972, plaintiff began to use the service mark HOULIHAN'S OLD PLACE to identify its bar and restaurant located at 4743 Pennsylvania in Kansas City, Missouri. The concept enjoyed immediate success and another HOULIHAN'S OLD PLACE was opened in New Orleans in July 1973. A third establishment was opened under the same name in Atlanta, Georgia in December 1974, and a fourth in Des Peres, Missouri, a suburb of St. Louis, in March 1975.
Since April 1972, plaintiff has opened establishments under the name HOULIHAN'S or HOULIHAN'S OLD PLACE in 22 different states. Currently, these establishments number 55, including three in metropolitan St. Louis. There are also 10 franchise HOULIHAN'S locations in the United States. In approximately 1983, plaintiff discontinued the use of OLD PLACE in its signs and advertising for the company-owned HOULIHAN'S because the majority of its customers refer to the establishments simply as HOULIHAN'S.
HOULIHAN'S is a bar and restaurant establishment. They were designed to provide an atmosphere resembling an Irish pub and, to that end, all HOULIHAN'S establishments are decorated with a standard decor package which includes similar types of wood, brass, glass and decorative artifacts.
A significant portion of HOULIHAN'S revenues, and an even more significant portion of HOULIHAN'S profits, are derived from the sale of alcoholic beverages. Plaintiff presented evidence that approximately 36% of HOULIHAN'S gross sales, and approximately 50% of HOULIHAN'S net profits are produced by sales of alcoholic beverages.
Since 1972, plaintiff has spent nearly $27 million in advertising and promoting its HOULIHAN'S establishments nationwide and those establishments have yielded nationwide sales in excess of $1 billion during that time. Advertisements for HOULIHAN'S bars and restaurants have appeared on television, radio and in newspapers and magazines throughout the United States.
In 1982, defendant Carrie Beverage Incorporated opened a bar which it operates in the Grand Avenue shopping mall in downtown Milwaukee, Wisconsin under the service mark MIKE HOULIHAN'S. The names in the service mark MIKE HOULIHAN'S refer to Michael Heyer and John Houlihan, who are the sole shareholders of defendant Carrie Beverage, Inc. Defendant Carrie Beverage, Inc. registered its service mark MIKE HOULIHAN'S with the State of Wisconsin on October 4, 1982.
Plaintiff was aware of the existence of the MIKE HOULIHAN'S bar in Milwaukee, Wisconsin shortly after that bar opened in 1982, but, notwithstanding such knowledge, no action was immediately taken by any of plaintiff's employees or officers.
In mid-1984, defendants announced plans to open another MIKE HOULIHAN'S in Minneapolis, Minnesota. On learning of defendants' plans, plaintiff informed defendants of plaintiff's rights in the HOULIHAN'S marks and demanded that defendants change their mark. Defendants nevertheless opened a MIKE HOULIHAN'S in Minneapolis, Minnesota in the fall of 1984. However, the bar failed within a year.
In early August 1985, defendant Carrie Beverage-Missouri opened a bar in the St. Louis Centre Shopping mall in downtown St. Louis under the service mark MIKE HOULIHAN'S. The names in the service mark MIKE HOULIHAN'S again refer to Michael Heyer and John Houlihan who are the officers of Carrie Beverage-Missouri.
During the fall of 1984, plaintiff announced that it would open another HOULIHAN'S in St. Louis Union Station in December 1985. In August 1985, plaintiff learned of defendants' plans to open a MIKE HOULIHAN'S in the St. Louis Centre shopping mall in downtown St. Louis, Missouri. Plaintiff again informed defendants of plaintiff's rights in the HOULI- *520 HAN'S marks and insisted that defendants change their mark.
Before MIKE HOULIHAN'S opened in St. Louis Centre, plaintiff had spent nearly $1.1 million promoting its establishments in Missouri. More than half of this was spent promoting the HOULIHAN'S in St. Louis through area-wide newspaper and radio advertising. Before MIKE HOULIHAN'S sold its first drink in St. Louis in August 1985, the two HOULIHAN'S locations in Kansas City and St. Louis had achieved statewide sales of almost $45 million.
Five months after Carrie Beverage-Missouri, Inc. had opened its MIKE HOULIHAN'S bar in St. Louis, plaintiff opened its restaurant utilizing the service mark HOULIHAN'S and HOULIHAN'S OLD PLACE in the Union Station complex in St. Louis, Missouri.
Plaintiff presented strong evidence of a nationwide reputation. Plaintiff's expert, Marshall Scott, testified that HOULIHAN'S is a well-known name inside and outside the restaurant industry and across the county. Plaintiff's evidence of a nationwide reputation is itself evidence of a statewide and local reputation. Plaintiff's statewide advertising and sales figures corroborate its statewide reputation. The HOULIHAN'S marks have acquired secondary meaning nationwide and in Missouri. To customers seeking food and beverage services in Missouri and across the nation, HOULIHAN'S means plaintiff's HOULIHAN'S.
Substantial actual confusion resulted from defendants' use of the name MIKE HOULIHAN'S in St. Louis Centre. Both plaintiff's and defendants' establishments experienced instances of actual confusion by customers and vendors, including misdirected telephone calls, misdirected vendor deliveries, and misdirected service calls. Current and former employees of plaintiff's establishments in Des Peres and Union Station testified to a number of misdirected telephone calls immediately after the opening of MIKE HOULIHAN'S which continued through the early months of 1986. Defendants' employees also testified to more than a dozen instances of misdirected vendor deliveries and misdirected service calls. Although the frequency of actual confusion has diminished over time, it continued up through the time of trial.
HOULIHAN'S is the distinctive word in the HOULIHAN'S marks as well as in the name MIKE HOULIHAN'S. The HOULIHAN'S marks are displayed in standard block lettering. MIKE HOULIHAN'S is also displayed in block lettering, which is slightly scripted. The HOULIHAN'S and MIKE HOULIHAN'S marks are similar in appearance.
HOULIHAN'S and MIKE HOULIHAN'S are in direct competition for bar revenues. The bar is a very important part of plaintiff's business. The percentage of plaintiff's gross sales and net profits produced by the sale of alcoholic beverages is further evidence of direct competition for bar sales between HOULIHAN'S and MIKE HOULIHAN'S.
Technically, MIKE HOULIHAN'S is not purely a drinking establishment. Its location in the center of the "food court" in St. Louis Centre puts it in direct competition with HOULIHAN'S for all customers, not just potential bar patrons. Customers of MIKE HOULIHAN'S can purchase food from other establishments in the food court and either stand at MIKE HOULIHAN'S bar and eat, or take their food and drink and sit at one of the tables available nearby for which MIKE HOULIHAN'S pays a common area maintenance fee. In addition, MIKE HOULIHAN'S has also obtained a Sunday liquor license from the State of Missouri. In order to obtain this license, MIKE HOULIHAN'S must provide evidence of and rely on the food sales achieved by the establishments in the food court. Each of these factors demonstrates the importance of the availability of food to the success of MIKE HOULIHAN'S. HOULIHAN'S and MIKE HOULIHAN'S are thus in direct competition for customers seeking food and beverage services. The geographic proximity of HOULIHAN'S in Union Station and MIKE HOULIHAN'S in St. Louis Centre, puts the two establishments in direct competition for the same customers.
*521 A survey was conducted at plaintiff's request to determine the likelihood of confusion of customers with respect to whether HOULIHAN'S and MIKE HOULIHAN'S are part of the same operation. The survey was conducted by Elrick and Lavidge, Inc., a firm which specializes in consumer surveys. The survey was conducted in an unbiased and scientific manner, utilizing generally accepted survey techniques. Impartial interviewers drew responses from a relevant pool of potential consumers. The questions posed were not leading, misleading or biased, and the recordation was handled in an unbiased manner.
In the survey, face-to-face interviews were conducted with a total of 200 men and women between the ages of 21-64. Qualified respondents were shown two photographs, one at a time, of the establishments in question. The photographs used in the survey represent HOULIHAN'S in the Union Station and MIKE HOULIHAN'S in St. Louis Centre. The respondent was then asked whether he or she believed that the two establishments were owned by or affiliated with the same company or different companies. If the individual responded with "same company" he or she was then asked, "What is it that makes you think they are owned by the same company?"
Of the 200 respondents interviewed, more than two-thirds, 67.5%, believed that both establishments were owned or affiliated with the same company. Moreover, more than four out of five respondents who said they think that both establishments are owned by or affiliated with the same company cited the name as the reason they came to that conclusion. Defendants commissioned no independent consumer survey to challenge the results of the Elrick and Lavidge survey and they presented no expert testimony to contradict those results.
Since the adoption of its service mark HOULIHAN'S OLD PLACE, two independent and non-related entities have used the surname HOULIHAN in restaurant and tavern operations. These include a full service restaurant in Vero Beach, Florida using the mark HOULIHAN'S and a bar in Salt Lake City, Utah, called HOULIHAN'S. Defendants contend that because plaintiff has allowed these other two entities to use the name HOULIHAN'S, defendants have invested substantial sums of money in the adoption and use of their respective businesses and service marks. However, defendants admit that they have spent absolutely no money in advertising. Defendants' advertising is limited to a sign over each of the two bars, and the name of the bar on cups, napkins and matchbooks. Furthermore, defendants make no claim that plaintiffs acquiesced to the defendants' use of the mark.

II. CONCLUSIONS OF LAW
This Court has pendent jurisdiction over plaintiff's claims of trademark infringement, anti-dilution and unfair competition as set forth in this Court's findings of fact. This action is against only defendant Carrie-Beverage Missouri, as the federal trademark claims have been disposed of. Accordingly, this judgment does not extend to Carrie-Beverage Wisconsin.

A. Trademark Infringement
A trademark is generally any word, name, symbol or device adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those sold or manufactured by others. Bass Buster, Inc. v. Gapen Manufacturing Co., 420 F.Supp. 144, 156 (W.D.Mo.1976). The function of a trademark is to identify the source of a product.
In an action for trademark infringement, plaintiff must establish two essential elements:
(1) ownership of a distinctive mark or name,
and
(2) defendant's use of a similar mark or name is likely to cause confusion as to the source of the products sold by defendant.
Emerson Electric Co. v. Emerson Quiet Kool Corp., 577 F.Supp. 668, 676 (E.D.Mo. 1983). Specifically, the ultimate issue is *522 whether defendant's design so resembles plaintiff's mark that it is likely to cause confusion among consumers as to whether plaintiff has sponsored, endorsed or is otherwise affiliated with the design. Mutual of Omaha Ins. Co. v. Novak, 836 F.2d 397, 398 (8th Cir.1987); WSM, Inc. v. Hilton, 724 F.2d 1320, 1330 (8th Cir.1984).
In order to claim ownership of a distinctive mark or name, a party must demonstrate that his use of the mark has been of such a quality and for such a duration that it has come to identify goods bearing it as originating from that party. D.C. Comics, Inc. v. Powers, 465 F.Supp. 843, 846 (S.D.N.Y.1978). Plaintiff must demonstrate its right in the mark through long, continuous use, extensive advertising and public acceptance of the mark. Armstrong Cork Co. v. Armstrong Plastic Covers Co., 434 F.Supp. 860, 870 (E.D.Mo. 1977). When these factors combine to cause an association by consumers of a mark with certain goods, distinguishing them from other goods, the mark has acquired a secondary meaning. That secondary meaning is entitled to protection by the courts. Armstrong, 434 F.Supp. at 870; Bass Buster, 420 F.Supp. at 1571.
The exclusive right to use the mark belongs to the first person who appropriates it and uses it in connection with a particular business. Any doubts as to confusion are to be decided against the newcomer. Jordan K. Rand Ltd. v. Lazoff Bros. Inc., 537 F.Supp. 587, 593 (D.P.R. 1982); Armstrong, 434 F.Supp. at 270.
Furthermore, the ownership of a trademark is acquired by use, not by registration. The right to use a trademark is unaffected by failure to register, and not even the right to exclude is obtained from registrations of the trademark. Jordan K. Rand, 537 F.Supp. at 593. Plaintiff has the burden of proving prior appropriation and use. Bass Buster, 420 F.Supp. at 157.
In sum, if plaintiff diligently tries to maintain distinctiveness of use in the name, and has achieved substantial success in the attempt, it can be concluded that the distinctiveness of the name has not been destroyed by third party usage and accordingly, the name has not become a common mark. Bass Buster, 420 F.Supp. at 159-60.
Whether a mark is entitled to trademark protection is initially analyzed by categorizing the mark as either: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir.1987); Anheuser-Busch, Inc. v. Stroh Brewery Co., 750 F.2d 631, 634 (8th Cir. 1984). A strong mark is usually fictitious, arbitrary or fanciful and is generally inherently distinctive. It is afforded the widest ambit of protection, and does not require proof of secondary meaning. Hallmark Cards, Inc. v. Hallmark Dodge, Inc., 634 F.Supp. 990, 997 (W.D.Mo.1986). A descriptive mark tells something about the product. It is only protected when secondary meaning is shown. The suggestive mark subtly connotes something about the service or product. Although less distinctive than fictitious, and therefore a comparatively weak mark, a suggestive mark will be protected without proof of a secondary meaning. General Mills, 824 F.2d at 625. The last category is generic terms which communicate information about the nature or class of an article or service and therefore can never become a service or trademark. University of Georgia Athletic Ass'n v. Laite, 756 F.2d 1535, 1540 (11th Cir.1985).
Whether the use of a particular mark is likely to cause confusion turns on an analysis of several factors set out in SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir.1980). The factors are (1) similarity of the marks; (2) the degree to which the products compete with each other; (3) classes of, and degree of care likely to be exercised by, prospective purchasers; (4) evidence of actual confusion; (5) defendant's intent in adopting the mark; and (6) the strength of plaintiff's mark. See also, Life Technologies, Inc. v. Gibbco Scientific, Inc., 826 F.2d 775, 776 (8th Cir.1987). Numerous factors may be weighed in determining whether there is a likelihood of confusion and no one factor is dispositive in reaching that conclusion. Life Technolo- *523 gies, 826 F.2d at 776; Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc., 815 F.2d 500 (8th Cir.1987).

1. Similarity of Marks

As for the first SquirtCo factor, marks do not need to be identical in order to be similar. In order to constitute an infringement, it is not necessary that the trademark be literally copied. Neither is it necessary that every word be appropriated. There may be infringement where the substantial and distinctive part of the trademark is copied or imitated. Emerson Elec., 577 F.Supp. at 677. The similarity of marks is to be determined by looking at the total effect of designation rather than by comparing individual features. Mutual of Omaha, 836 F.2d at 399.
The similarity of the two trademarks is based on an examination of the marks as a whole, including visual impression. Furthermore, the degree of similarity is judged by comparing the marks, not side by side, but as they appear in the market place. Hallmark Cards, 634 F.Supp. at 990. It is not necessary to conclude that the names and logos are exactly the same. Factors to consider are similarity in size, form, color and location of the mark. Furthermore, similarities weigh more heavily than the differences. Whether an imitation which is not an exact copy constitutes an infringement depends upon whether the resemblance is such as to be likely to deceive ordinary purchasers of that class of goods and cause them to believe in purchasing the goods of the defendant that they are the goods of plaintiff. Queen Mfg. Co. v. Isaac Ginsberg & Gros., Inc., 25 F.2d 284, 287 (8th Cir.1928).
There may be infringement where the substantial and distinctive part of the trademark is copied or imitated. Hallmark Cards, 634 F.Supp. at 998. Where a trademark contains a dominating or distinguishing word, and where the purchasing public has come to know and designate the article by such dominating word, the use of such word by another in marking similar goods may constitute infringement although the latter mark, aside from the dominating word may be dissimilar. Queen Mfg., 25 F.2d at 287. Although names are not identical, similarity will deceive almost as much as precise identity. Nice and careful discrimination between the names cannot be expected from a busy public.
The right to operate under one's own name is not unlimited. The first user of the name is entitled to protection. A family name cannot be used to appropriate the business of another. Such use, even surnames, can be enjoined. Cunetto House of Pasta v. Tuma, 689 S.W.2d 690, 692 (Mo.App.1985). Moreover, the use of different modifying words is not considered sufficient to dispel the likelihood of confusion, when the most prominent word in the names appears in both. Bass Buster, 420 F.Supp. at 160.
Here, there is no doubt that the word HOULIHAN'S is the dominating word, and distinguishing feature of both plaintiff's and defendant's marks. Further both plaintiff's and defendant's use of the word HOULIHAN'S is in block lettering. Finally, the consuming public has come to know plaintiff's trademark as representing a restaurant/bar facility.
It is true that there are some minor differences between the two marks. Defendants' mark is in a slight script. Further, defendants use the word MIKE in front of the word HOULIHAN'S. However, the use of a modifying word is not sufficient to dispel the likelihood of confusion, when the most prominent word in the name appears in both.
There is no doubt that although the imitation is not an exact copy, the resemblance is such as to be likely to deceive ordinary patrons of restaurant/bar facilities. Nice and careful discrimination between HOULIHAN'S and MIKE HOULIHAN'S cannot be expected from a busy public.
The evidence shows that survey respondents believed that the two establishments were owned by, or affiliated with the same company, and, most said they reached that conclusion because of the name. Such being the facts, the Court finds that the mark *524 employed by defendant would likely deceive ordinary consumers of such goods using ordinary caution.

2. The Degree to Which the Products Compete With Each Other

Although infringement may be found in the absence of direct competition, the similarity and competitive proximity of the products is an important factor in determining likelihood of confusion. The greater the similarity, the greater the likelihood of confusion. Emerson Elec., 577 F.Supp. at 677.
In this case, both plaintiff and defendant operate facilities with bars. Further, they both have a direct association with food. Finally, the two facilities are located within one mile from each other in downtown St. Louis. There can be no doubt under the circumstances that the similarity and competitive proximity between plaintiff's and defendants' products are significant, and that this factor weighs in favor of finding trademark infringement. When the parties sell their products in the same states, have some of the identical customers and have some of the same competitors, then the parties' channels of trade are similar. Induct-O-Matic v. Inductotherm, 747 F.2d 358, 362.

3. Classes of, and Degree of Care Likely to be Exercised by Prospective Purchasers

The expertise of the purchasers does not always assure the absence of confusion. Induct-O-Matic, 747 F.2d at 364. It is not unreasonable to assume that even sophisticated customers assume that many companies acquire satellites and/or subsidiaries. Hallmark Cards, 634 F.Supp. at 999-1000. In this case, the target market for both products is the same adult members of the general population. It is not at all unreasonable for the ordinary purchaser generally familiar with the trademark HOULIHAN'S to believe that defendants' bar, with the trademark MIKE HOULIHAN'S, is somehow related to, associated with or sponsored by plaintiff.

4. Actual Confusion

Likelihood of confusion, not actual confusion, is the test. While actual confusion is not essential, it is positive proof of the existence of a substantial likelihood of confusion. Downtowners/Passport Hotel Corp. v. Norlew, Inc., 841 F.2d 214, 219 (8th Cir.1988); Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609, 612 (7th Cir.1965); Hallmark Cards, 634 F.Supp. at 999; Emerson Elec., 577 F.Supp. at 678. The test of likelihood of confusion is the general overall impression created in the mind of the consumer who may have imperfect recall of the plaintiff's trade name or mark. Armstrong, 434 F.Supp. at 871.
Surveys are often used to demonstrate actual consumer confusion. Courts frequently give substantial weight to properly conducted surveys, unless they are seriously flawed. Mutual of Omaha, 836 F.2d at 400-401; Anheuser-Busch, 750 F.2d at 639. A survey is considered to be properly conducted if the survey was fairly and scientifically conducted by qualified experts and impartial interviewers, if the study drew responses from a sample of a relevant portion of potential customers, if the questions upon which the results relied do not appear to be misleading or biased, and if the recordation of responses was handled in a completely unbiased manner. Anheuser-Busch, 750 F.2d at 639.
In this action, the Court finds that the survey conducted by Elrick and Lavidge is valid and was properly conducted. The survey demonstrated that more than two-thirds of those persons polled believe that HOULIHAN'S and MIKE HOULIHAN'S were affiliated in some manner. Further, there were incidents reported of actual confusion between the two stores. Thus, this Court can conclude that actual confusion exists as to whether plaintiff is the source of defendants' product. This presence of actual confusion is positive proof of the existence of a substantial likelihood of confusion. Thus, this factor weighs strongly in favor of finding trademark infringement on the part of defendant.

*525 5. Intent

Intent is not an element of trademark infringement, but the deliberate adoption and use of a mark similar to another's mark gives rise to an inference that confusion is likely to occur. Emerson Elec., 577 F.Supp. at 678. Where evidence demonstrates that another name was adopted deliberately with a view to obtain some advantage from the good will, good name and good trade which another has built up, then the inference of confusion is readily drawn, for the very act of the adopter has indicated that he expected confusion and resultant profit. D.C. Comics, 465 F.Supp. at 848. Intent to pass off one's goods as another's is not essential to an infringement claim; rather, its presence or absence is only one factor to be considered along with the other factors that bear on the issue of likelihood of confusion. Mutual of Omaha, 836 F.2d at 400; Hallmark Cards, 634 F.Supp. at 999; Tisch Hotels, 350 F.2d at 613.
As this Court stated in its findings of fact, the issue of whether defendants intended to infringe on plaintiff's mark has already been resolved by the jury which heard defendants' counterclaim against plaintiff. The jury found that defendants did not intend to infringe upon plaintiff's mark. Thus, this Court is collaterally estopped from concluding otherwise. However, even though this factor weighs in favor of finding no infringement, it is only one factor of the many to be considered which bear on the issue of likelihood of confusion.

6. Strength of Plaintiff's Mark

Stronger marks are accorded more protection from a likelihood of confusion than are weaker marks. A strong mark is a distinctive quality fostered by advertising, continuous use, and a significant amount of money generated in sales. Emerson Elec., 577 F.Supp. at 678. Simply because other businesses use plaintiff's mark does not preclude a finding of a strong distinctive mark. Third-party usage of a mark similar to the plaintiff is relevant only when defendants can show that the third-party's marks are actually used, well-promoted or recognized by consumers. Hallmark Cards, 634 F.Supp. at 1000.
There can be no doubt based upon the facts, and defendants do not controvert this finding in any way, that plaintiff's mark is a very strong mark. As a strong mark, plaintiff's use of the word HOULIHAN'S is accorded more protection from the likelihood of confusion created by defendants' use of the mark MIKE HOULIHAN'S.

7. Conclusion

Plaintiff has proven uncontroverted evidence that in 1972 it appropriated the name HOULIHAN'S for its restaurant and has since used the name continuously. Plaintiff's appropriation and use of the name was prior to that of defendants, who first began use of the name in 1982. Therefore, plaintiff has acquired trademark rights in that name. It is further the conclusion of this Court that plaintiff has established that defendants' use of the mark MIKE HOULIHAN'S is likely to cause confusion as to the source of the products sold by defendants. Thus, as a fictitious, arbitrary or fanciful mark, plaintiff's mark is entitled to the widest ambit of protection. Therefore, unless defendants' defenses are meritorious, plaintiff is entitled to relief.

B. Affirmative Defenses
The Court prefaces the following analysis by stating that it is only in the most exceptional circumstances that injunctive relief will be denied when trademark infringement has been found. Tisch Hotels, 350 F.2d at 615. Defendant raises four affirmative defenses.

1. Doctrine of Laches

To invoke the doctrine of laches, defendants have the heavy burden of showing prejudice because of delay as well as the inexcusable character of delay. The mere passage of time is not sufficient to constitute laches. Defendants must show that it relied upon plaintiff's knowledge or notice of its infringing activities and so changed its position that it would now be inequitable for the court to enforce plaintiff's *526 rights in its trademark. Armstrong, 434 F.Supp. at 872.
It is only where the delay is so prolonged and inexcusable that it amounts to a virtual abandonment of the right by plaintiff for a long period of time that the balance of the equities would favor the knowing infringer. Tisch Hotels, 350 F.2d at 615.
Although unreasonable delay may bar injunctive relief, the defense of laches is reserved for those rare cases where a protracted acquiescence by plaintiff induces defendants to undertake activities in reliance on the acquiescence. Rand, 537 F.Supp. at 594.
MIKE HOULIHAN'S opened in St. Louis in August of 1985. Plaintiff filed this suit in October of 1985. The Court finds upon an examination of the facts first, that there was not an unreasonable delay and second, that defendants did not undertake activities in reliance on the delay. Thus, defendants' affirmative defense fails.

2. Unclean Hands

Defendants contend that plaintiff should not be entitled to maintain its claim because of its unclean hands. Defendants argue that plaintiff's sole basis in obtaining this Court's jurisdiction was plaintiff's reliance on its federal service mark registrations for HOULIHAN'S OLD PLACE and HOULIHAN'S OLD PLACE with design. The jury found that plaintiff had fraudulently obtained these trademarks. Thus, this Court dismissed plaintiff's Lanham Act claims based on unclean hands. Defendants contend that plaintiff's federal service mark registration was the sole basis for this Court's jurisdiction of any of plaintiff's claims. Since plaintiff relied upon fraudulent federal service mark registrations as the basis for its Lanham Act claims, and joined those claims in the same action with its common law claims, defendant argues that plaintiff's common law claims must also be stricken because of the doctrine of unclean hands.
The law is clear, however, that even if registrations were procured by fraud, the validity of the registration will not affect a plaintiff's common law rights, for the right to exclude others arises from use  not registration. Thus, this affirmative defense fails even if the registrations were fraudulently procured. Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp., 350 F.Supp. 1341, 1369 (E.D.Pa. 1972).
The jury did find that plaintiff had obtained its trademark registration fraudulently. Nonetheless, plaintiff is still entitled to protect its common law rights, and the doctrine of unclean hands does not act as a bar to that right.
Defendants also contend that the doctrine of unclean hands applies because plaintiff is not the proper party in interest in this cause of action. The Court finds this argument to be without merit, as the Court concludes that plaintiff is the proper party in interest.

3. Collateral Estoppel

Defendants' third affirmative defense is that plaintiff's claim must be denied by the applicability of the doctrine of collateral estoppel. This Court has already addressed this issue in its earlier order dated August 5, 1988 in which defendants' motion for summary judgment was denied on the same grounds. The Court found that the doctrine of collateral estoppel did not bar plaintiff's claims. The only issue resolved by the jury, and which this Court has accepted as part of its findings, is that defendants did not intentionally infringe on plaintiff's use of the trademark HOULIHAN'S. Thus, the Court finds that defendants' third affirmative defense fails.

4. Acquiescence

Any conduct by a plaintiff which amounts to assurances to a defendant, either express or implied, that plaintiff's trademark rights would not be enforced against defendants constitutes acquiescence. Estoppel by acquiescence bars a plaintiff from recovery due to its actions or inactions, regardless of the period of delay.
*527 Here, plaintiff did not engage in any activity, either express or implied, which amounts to assurances to defendant that plaintiff would not engage in any action to protect its trademark. In fact, plaintiff wrote several letters to defendant indicating that defendant was infringing upon plaintiff's mark and directing defendants to desist from such action.

5. Conclusion

In sum, plaintiff has established that it has a trademark, and that defendants' use of its own mark is likely to cause confusion as to the source of defendants' goods. Even if the evidence left doubt as to whether confusion exists, the Court must resolve that doubt against the newcomer. Armstrong, 434 F.Supp. 860 (E.D.Mo.1977); Midwest Research Institute v. S & B Promotions, 677 F.Supp. 1007, 1015 (W.D.Mo. 1988). Further, defendant has presented no viable affirmative defenses which would preclude plaintiff's claim of trademark infringement. Therefore, the Court finds that defendant has infringed upon plaintiff's marks, and the Court will enter judgment accordingly.

C. Unfair Competition
Plaintiff's second claim is for unfair competition. The essence of law for unfair competition is fair play. Under both statutory and common law, unfair competition is established by showing one party is "passing off" his product as that of another so that the public is deceived regarding the source of the goods. Bass Buster, 420 F.Supp. at 160. Proof of deceitful intent is not a necessary element of the tort of unfair competition. Id.
A plaintiff's failure to establish a statutory right to the trademark does not affect its common law claim of unfair competition. National Trailways Bus System v. Trailway Van Lines, Inc., 269 F.Supp. 352, 357 (E.D.N.Y.1965). A plaintiff has a cause of action for unfair competition regardless of whether or not a trademark has been registered with the patent office. Unfair competition is available to protect a trademark, registered or not.
The law is well settled that the same facts which support a suit for trademark infringement support a suit for unfair competition. See Emerson Electric, 577 F.Supp. at 679. Thus, as the Court has determined defendants have infringed on plaintiff's trademark through its use of the name MIKE HOULIHAN'S, by the same token, the Court finds that defendants have engaged in unfair competition.
In this action, as this Court has already discussed numerous times, this Court is collaterally estopped from reviewing the issue of whether defendants intended to infringe upon plaintiff's trademark. The jury has already determined that defendants did not so act. However, a party can engage in unfair competition even though it does not possess intent. Bass Buster, 420 F.Supp. at 160. The Court finds that defendants did so engage.

D. Missouri Anti-Dilution Statute
Missouri's anti-dilution statute provides that the "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark ... valid at common law ... shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." R.S.Mo. § 417.061.
The gravamen of a dilution complaint is that the continuing use of a mark similar to plaintiff's mark will inevitably have an adverse effect upon the value of plaintiff's mark and that if he is powerless to prevent such use, the plaintiff's mark will eventually be deprived of all distinctiveness. WSM, 724 F.2d at 1332.
To prevail, plaintiff must show its mark or trademark was valid at common law, that its mark is distinctive, and that defendants' use of its name created a likelihood of dilution of the distinctive quality of plaintiff's mark. Hallmark Cards, 634 F.Supp. at 1000.
The dilution theory is only applicable if plaintiff's mark is arbitrary, coined, fanciful or has become distinctive by acquiring *528 a secondary meaning. WSM, 724 F.2d at 1332; Midwest Research, 677 F.Supp. at 1017.
As has already been determined, there is no dispute that plaintiff's mark is arbitrary, coined, or fanciful, and has become distinctive by acquiring a secondary meaning. Further, because there is a likelihood of confusion as a result of defendants' use of the name MIKE HOULIHAN'S, defendants' conduct is likely to cause dilution of the distinctive quality of plaintiff's HOULIHAN'S marks. There is also a strong likelihood of injury to plaintiff's business reputation as a result of defendants' use of the name MIKE HOULIHAN'S in connection with an establishment which serves primarily alcohol. Accordingly, the Court finds that defendants' use of the mark MIKE HOULIHAN'S violates the Missouri anti-dilution statute.

E. Relief
The Missouri anti-dilution statute provides that a violation of the statute will result in the automatic imposition of an injunction. As the Court has found that defendants have violated the Missouri anti-dilution statute, the Court must automatically order that defendants refrain from using the offending mark. The Missouri anti-dilution statute does not condition the granting of an injunction upon compliance with equitable principles. Hallmark Cards, 634 F.Supp. at 1001. Furthermore, plaintiff has proven that defendants' acts of trademark infringement and unfair competition will continue to cause confusion unless enjoined. Bass Buster, 420 F.Supp. at 161. Thus, the Court will grant an injunction against defendants' use of the mark MIKE HOULIHAN'S in Missouri.
Defendants have indicated that they spend absolutely no money in advertising. Their only expenditures are in the sign hanging over the store, and the logo appearing on the napkins and cups. Thus, very little needs to be changed. The Court will allow defendants three months in which to make the necessary changes to the sign and products, as well as to any other items which require a change.
The scope of injunctive relief which the Court may grant under the circumstances of this case is limited to the State of Missouri. At the termination of the three-month period, therefore defendants are fully enjoined from using the name MIKE HOULIHAN'S in their business within the State of Missouri.
Plaintiff has also requested this Court to award damages. This Court finds, however, that an injunction is a sufficient remedy for the damage caused by defendant's use of the mark MIKE HOULIHAN'S, and additional damages are not warranted.

F. Standing
The final issue before the Court is the issue raised by defendants regarding plaintiff's standing. Defendants contend that Penn 4743 Corp., a Missouri Corporation, is the true party in interest. As Penn 4743 is not a party to this action, the case should be dismissed. The Court finds this argument to be without merit.
Plaintiff Gilbert/Robinson has the statutory and common law right to prosecute claims for federal, state and/or common law service mark infringement by defendant. Plaintiff has this right because as owner of federal service mark registrations, use of the HOULIHAN'S marks by its subsidiaries and licensees inures to the benefit of Gilbert/Robinson. 15 U.S.C. §§ 1055, 1127; Alligator Co. v. Robert Bruce, Inc., 176 F.Supp. 377, 378-79 (E.D. Pa.1959).
As the use of the HOULIHAN'S marks by its wholly owned subsidiaries inures to the benefit of Gilbert/Robinson under both the common law and the Lanham Act, Gilbert/Robinson is the owner of all service mark rights in the HOULIHAN'S marks. As owner, plaintiff is entitled under both the common law and the Lanham Act to prosecute all claims for infringement, including its federal, state and common law claims against this defendant. Thus, Gilbert/Robinson is the "real party in interest" within the meaning of Federal Rule of Civil Procedure 17. The citizenship of the *529 parties is therefore wholly irrelevant to this Court's jurisdiction because Gilbert/Robinson's state and common law claims were joined with its federal trademark action under the Lanham Act, and this Court has already decided to exercise pendent jurisdiction over those claims.
Defendants contend that because this Court granted defendants' summary judgment motion as to plaintiff's Lanham Act claims, Gilbert/Robinson is no longer in a position to defend infringement on its mark. Such a position is incorrect. Gilbert/Robinson is still in possession of its federal trademark and is still in a position, as the owner of the common law and federal trademark to defend that mark against any infringement or unfair competition.
The Court finds, upon consideration of all of the pleadings regarding this issue, that plaintiff did, in fact, have standing to bring this cause of action. Thus the Court will deny defendants' motion to dismiss plaintiff's cause of action for lack of standing.
Judgment will be entered in accordance with this Memorandum.

JUDGMENT AND ORDER
In accordance with the accompanying memorandum filed today herewith,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of plaintiff and against defendant on plaintiff's claims of trademark infringement, unfair competition and violation of the Missouri Anti-Dilution Statute.
IT IS FURTHER ORDERED that defendant is permanently enjoined from using its trademark MIKE HOULIHAN'S in the State of Missouri, effective ninety days from the date of this judgment.
IT IS FINALLY ORDERED that defendant's motion to dismiss plaintiff's complaint for lack of standing is DENIED.