7/30/01

THIS DISPOSITION
IS CITABLE AS
PRECEDENT

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
2900 Crystal Drive
Arlington, Virginia 22202-3513

GFR

Opposition No. 110,043

Hornblower & Weeks, Inc.

v.

Hornblower & Weeks, Inc.

Before Seeherman, Wendel and Rogers,
Administrative Trademark Judges.

Rogers, Administrative Trademark Judge:

Applicant Hornblower & Weeks, Inc., a *Delaware*
corporation, has applied to register the mark HORNBLOWER
& WEEKS for services identified as "investment banking,
investment management and brokerage services namely,
public and private underwriting, distribution and
placement of corporate, municipal and governmental
securities, investment management and counseling services
and brokerage of securities and commodities," in
International Class 36.[1]  After the Office published
applicant's mark for opposition, Hornblower & Weeks,

---

[1] Application serial no. 75/283,988, filed April 30, 1997, based
on applicant's professed bona fide intention to use the mark in
commerce.

Inc., a *Georgia* corporation, filed a notice of opposition. Now ready for consideration are opposer's motion for summary judgment, with its included request for leave to amend the notice of opposition, and applicant's combined response and cross-motion for "relief granting registration in its intent-to-use application and relief canceling opposer's current registration #2,162,233 of October 12, 2000."[2]

### *The Pleadings*

We consider first the pleadings and opposer's motion for leave to amend its notice of opposition. Opposer's notice of opposition sets forth alternative claims under Section 2(d) of the Lanham Act, 15 U.S.C. §1052(d). The notice relies on (1) opposer's claim of actual use of a mark identical to that in applicant's intent-to-use

---

[2] Applicant is represented by Ralph Hornblower, III, who signed the involved application as applicant's secretary, but signed the response and cross-motion as its counsel and president. Applicant's response and cross-motion is dated February 9, 2001. It includes a certificate attesting to the forwarding of opposer's service copy on February 10, 2001. There is no certificate of mailing, however, and the combined filing was not received by the Office until February 15, 2001. Since applicant's response to opposer's motions was due February 12, 2001--by virtue of an earlier approved motion to extend--the response and cross-motion is untimely. Nonetheless, in view of the potentially dispositive nature of opposer's motion for summary judgment in the opposition and what we view as applicant's cross-motion for judgment on its affirmative defense, we have exercised our discretion and considered applicant's filing in its entirety.

application, prior to the filing date of that application, and on (2) an approved, use-based application to register the mark.

*Opposer's* HORNBLOWER & WEEKS mark was published for opposition on March 10, 1998. Thus, when opposer filed its notice of opposition on March 27, 1998, it pleaded ownership of its application and asserted: "The registration is expected to issue in due course." When applicant filed its answer, it could not have included a counterclaim for cancellation of opposer's anticipated registration, because it had not yet issued.[3] Applicant's answer did, however, include the following allegations denominated as affirmative defenses:

> 11. The Notice of Opposition fails to state a claim upon which relief can be granted.
>
> 12. Applicant, and not Opposer, has superior rights in the HORNBLOWER & WEEKS mark.
>
> 13. Opposer's alleged use of the HORNBLOWER & WEEKS mark constitutes a fraudulent trading on the reputation of others, and therefore opposer cannot be damaged by registration of the mark to Applicant.

After the answer was filed, the parties agreed to, or obtained by motion, a number of extensions or

---

[3] Registration no. 2,162,233 issued on June 2, 1998, nearly two weeks after applicant filed its answer.

suspensions of the discovery and trial schedule or of certain deadlines relating to discovery. At no time did either party move for leave to amend its pleading.

On November 30, 2000, opposer filed its motion for summary judgment. In support of that motion, opposer submitted, among other items, a certified copy of registration no. 2,162,233 showing that the registration is subsisting and owned by opposer. The motion includes a footnoted request that "[t]o the extent necessary, Opposer hereby also moves to amend the notice of opposition to plead its [registration] which issued subsequent to the filing of the notice of opposition initiating this proceeding." Applicant, despite including in its response thereto a request for "relief canceling opposer's current registration," did not move for leave to amend its answer to assert a counterclaim and did not file the fee for a counterclaim.

For the reasons explained below, we enter judgment in favor of opposer on its Section 2(d) claim only insofar as it is based on actual use of the HORNBLOWER & WEEKS mark in commerce prior to the filing date of applicant's intent-to-use application[4], and on applicant's

---

[4] If opposer did not have a registration, applicant would still be confronted with opposer's common law rights accrued through

4

affirmative defense which, as explained herein, we consider to be a defense asserting that opposer has unclean hands. Therefore, we do not reach the merits of either opposer's footnoted request to amend its notice of opposition to rely on its registration or applicant's request for cancellation of the registration without support of a counterclaim.

### *Opposer's Motion for Summary Judgment*

Opposer, as the party moving for summary judgment, bears the initial burden of demonstrating the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Celotex Corp. v. Catrett, 477 U.S. 317 (1986) and Sweats Fashions Inc. v. Pannill Knitting Co. Inc., 833 F.2d 1560, 4 USPQ2d 1793 (Fed. Cir. 1987). If opposer meets this burden, then applicant, to avoid entry of an adverse judgment, must present sufficient evidence to show an evidentiary conflict as to one or more material facts in

---

use. *See*, *e.g.*, Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 2 USPQ2d 1264 (1st Cir. 1987). *See also*, In re International Flavors & Fragrances Inc., 183 F.3d 1361, 1366, 51 USPQ2d 1513, 1516 (Fed. Cir. 1999)("The owner of a trademark need not register his or her mark in accordance with the Lanham Act in order to use the mark in connection with goods or to seek to prevent others from using the mark."), and In re McGinley, 660 F.2d 481, 486 n.12, 211 USPQ 668, 674 n.12 (CCPA 1981) (User of mark refused registration under Section 2(a) of the Lanham Act still may enforce rights under common law).

issue. *See* <u>Opryland USA Inc. v. Great American Music Show Inc.</u>, 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992). In our consideration of opposer's request for judgment, the evidence must be viewed in a light most favorable to applicant as the non-movant, and all justifiable inferences are to be drawn in the non-movant's favor. <u>Lloyd's Food Products Inc. v. Eli's Inc.</u>, 987 F.2d 766, 25 USPQ2d 2027 (Fed. Cir. 1993); *Opryland USA*, *supra*. In considering whether to grant or deny a motion for summary judgment, the Board may not resolve issues of material fact, but can only ascertain whether genuine disputes exist regarding such issues. *Opryland USA, supra*, and *Lloyd's Food Products, supra*.

Opposer, as the party moving for summary judgment in its favor on its Section 2(d) claim based on prior use, must establish that there is no genuine dispute as to (1) its priority of use and (2) that contemporaneous use of the HORNBLOWER & WEEKS mark by the parties, for their respective services, would be likely to cause confusion, mistake or to deceive consumers.

In regard to likelihood of confusion, applicant admitted in its answer that the parties' marks are identical; and we note that opposer's president has, in his declaration, attested to opposer's use of the mark

for "security brokerage, investment banking and asset management services," which are, in large part, identical to applicant's identified services.  Use of identical marks for virtually identical services would create a likelihood of confusion.  Indeed, as revealed by the following passage from applicant's response to the motion for summary judgment (pp.7-9), applicant does not dispute that a likelihood of confusion would result:

> "Certainly there is confusion between the legitimate Hornblowers who continue to be very much in commerce in the financial services industry in various capacities under the Hornblower name--a name which is distinctive and unforgettable.
> … There is great similarity of trade channels that applicant and pretender opposer are likely to use.  Opposer has even located one of his [sic] offices in the same building as the original firm.
> … Much of the brokerage business is done through 'cold calling,' and the immediate and first impression [of] use of the unusual name *Hornblower* would obviously create confusion on the part of potential customers, and lead them to assume they are dealing with the legitimate users of the name. … Applicant['s] shareholders are very much aware of the responsibility they owe to their forebears in establishing a mark of such renown and reputation.  That [opposer is] mining that goodwill and 'palming off' or attempting to pass off by deception that they are the legitimate users of the mark is too obvious to comment upon." (Italic in original).

The question whether opposer has carried its initial burden as the party moving for summary judgment, thus,

comes down to the question of whether opposer has established that there is no genuine issue of fact regarding its priority of use.  We find that it has.

The declaration of John R. Rooney attests to his status as president of opposer; that opposer "has continuously provided security brokerage, investment banking and asset management services identified by the service mark, HORNBLOWER & WEEKS for institutional, corporate and individual clients, since at least as early as November 1, 1996"; that opposer has been a member of the National Association of Securities Dealers, Inc. since the same date and applied for and received authorization from that body "to use the service mark and trade name HORNBLOWER & WEEKS"; that opposer has, since its first adoption of the mark, "continuously used its service mark in promotional and advertising materials… and in other ways"; that opposer has expended in excess of $100,000 on promotions and advertising featuring the mark and generated revenues in excess of $25 million; and that opposer "has made exclusive use of the mark HORNBLOWER & WEEKS in connection with its security brokerage, investment banking and asset management services, since adoption of the name in 1996"; and that Mr. Rooney is "not aware of any use of the trade name or

service mark by any unrelated entity for security brokerage, investment banking and asset management services, since that time."

Opposer did not introduce any corroborative evidence, but Mr. Rooney's declaration testimony is internally consistent, is not characterized by uncertainty, and is not challenged in any way by applicant. Moreover, applicant does not challenge the Rooney declaration insofar as it asserts adoption and use by opposer of HORNBLOWER & WEEKS as of a date prior to the filing date of applicant's intent-to-use application, or insofar as it alleges continuous use since that date. Nor has applicant attempted to show that it has made any use of HORNBLOWER & WEEKS that would establish applicant's priority under the law as to that mark. The most that can be said is that opposer acknowledges the earlier use of HORNBLOWER & WEEKS by members of the Hornblower family, or by businesses in which they were involved. However, opposer asserts that that particular mark had not been in use for at least 15 years prior to opposer's adoption[5], and applicant does not dispute this point.

---

[5] A letter written by NASD Regulation, Inc. to applicant's president, produced during his discovery deposition and introduced by opposer with its motion for summary judgment,

*Applicant's Affirmative Defenses*

Applicant has clearly expressed displeasure with opposer's adoption and use of a mark--HORNBLOWER & WEEKS--that assertedly had been in use for many years by members of the Hornblower family in conjunction with various business enterprises in which they had been involved.  In doing so, applicant alludes to issues that have not been pleaded, but which we consider nonetheless as an attempt to set up one or more affirmative defenses.

Applicant argues that since 1978, "applicant, and other family shareholders of applicant, have been in continuous commerce, using marks **Ralph Hornblower, Hornblower & Company, P.B. Hornblower, and P.S. Hornblower, Hornblower Capital, and R. Hornblower & Company**, among others, all uses of which greatly precede opposer's first use on November 1, 1996." (Bold in original.)  Applicant also argues that "applicant['s] shareholders have used the **Hornblower** mark since the Hornblower & Weeks firm was merged into Shearson. …[Opposer] began using the Hornblower name only in the last few years, and by no stretch of the imagination

supports opposer's assertion.  The letter is discussed in more detail, *infra*, in connection with applicant's request for judgment in its favor on its affirmative defense.

10

could be held to be a prior user of the mark in commerce." (Bold in original.) Applicant does not contend that there was any use of the HORNBLOWER & WEEKS mark, by it, by any related entity, or by any member of the Hornblower family, since the referenced merger.

We note that only some of the facts asserted by applicant are supported by its president's declaration and the rest is mere argument. We have, however, considered the entirety of the presentation in our effort to discern whether applicant is attempting to assert that it has defenses which it could plead, if granted leave to do so, and which would have to be considered vis-a-vis opposer's motion for summary judgment in the opposition.

In essence, applicant appears to be arguing either (1) that there is a family of Hornblower marks on which applicant may rely and which was fully formed prior to opposer's adoption and use of HORNBLOWER & WEEKS, or (2) that prior adoption and use by applicant's president and other shareholders in applicant of one or more of various Hornblower marks precludes a finding of priority in opposer in regard to the HORNBLOWER & WEEKS mark.

With respect to the first argument, it is well settled that a family of marks argument can be used offensively as a sword but not defensively as a shield.

11

*See* <u>Baroid Drilling Fluids Inc. v. Sun Drilling Products</u>, 24 USPQ2d 1048 (TTAB 1992). The *Baroid* decision dealt squarely with the question also presented by the case at hand, specifically, "the question of whether a defendant in a Board inter partes proceeding can rely upon its asserted ownership of a family of marks as a defense against a plaintiff's intervening common-law rights." *Baroid*, supra at 1049. In explaining why a defendant could not, the Board noted:

> The issue under Section 2(d) is whether *applicant's mark sought to be registered,* or *respondent's mark, the registration of which is sought to be cancelled,* so resembles plaintiff's registered and/or previously used mark or marks as to be likely to cause confusion. Thus, the fact that a plaintiff may rely upon *any* confusingly similar mark which it has either registered or previously used, is to be contrasted with the fact that a defendant whose *sole* mark in issue is its mark sought to be registered or its mark sought to be cancelled, can rely upon only its rights in that mark, except in very limited situations. [Italics in original]
>
> One situation involves a defendant's claim that it already owns a substantially similar registered mark for substantially similar goods and/or services such that the second registration (or second registration sought) causes no added injury to the plaintiff. See: Morehouse Manufacturing Corp. v. J. Strickland & Co., 407 F.2d 881, 160 USPQ 715 (CCPA 1969).
>
> A second situation involves a defendant's attempt to defeat a plaintiff's priority of use claim by virtue of the defendant's earlier use

12

of a mark which is the legal equivalent of defendant's involved mark for the same or similar goods. This latter situation involves the concept of 'tacking.' See: Van Dyne-Crotty Inc. v. Wear-Guard Corp., 926 F.2d 1156, 17 USPQ2d 1866 (Fed. Cir. 1991), aff'g 18 USPQ2d 1804 (TTAB 1990) [other citation omitted] … [A] party seeking to tack on its use of an earlier mark to its use of a later mark may do so only if the earlier mark is the legal equivalent of the mark in question or indistinguishable therefrom, and would be considered by purchasers as the same mark. For purposes of tacking, two marks are not necessarily legal equivalents merely because they are considered to be confusingly similar. Tacking of an earlier use of one mark onto the later use of a very similar mark, for purposes of priority, has been permitted only in "rare" instances. [citation omitted].

To allow a defendant to plead and prove as a defense against a plaintiff's intervening common-law rights that it owns an earlier family of marks would create, at least in our minds, an unacceptable loophole to the stringent standards applicable to the two situations set forth above. [footnote omitted] The loophole would be unacceptable because, as noted above, the priority-of-use issue under Section 2(d) (when priority of use is in issue) is whether the defendant's use of its mark sought to be registered, or the registration of which is sought to be cancelled, precedes the plaintiff's use of the plaintiff's pleaded mark(s), not whether the defendant has priority of use of another mark or marks which the plaintiff's mark(s) so resembles as to be likely to cause confusion. Thus, we must narrowly construe the availability of defenses grounded upon ownership of other earlier-used and/or registered marks.

*Id*. at 1052-53.

For the reasons clearly articulated in *Baroid*, applicant in the instant case is unable to rely on any family of marks, whether inchoate or fully formed, as a defense to opposer's Section 2(d) claim based on prior actual use in commerce of the HORNBLOWER & WEEKS mark. In closing our discussion of the family of marks issue, we note an observation made in the *Baroid* decision. That is, for an applicant who may lose an opposition battle before the Board because of its inability to rely on family of marks as a defense, there is always the possibility that such applicant could ultimately win the war in a civil action in which it can assert the family of marks argument offensively. *See Baroid*, *supra* at 1053 ("…[A] party unable to claim a family of marks defense for priority [at the Board] nonetheless has an adequate remedy in a court with appropriate jurisdiction.").

In regard to the second argument referenced above, i.e., that prior adoption and use by applicant's president and other shareholders in applicant of one or more of various Hornblower marks precludes a finding of priority in opposer in regard to the HORNBLOWER & WEEKS mark, we consider this as an allusion to a possible defense based on the *Morehouse* decision or on "tacking." The *Morehouse* defense, however, is inapplicable, as

14

applicant does not claim that any of the Hornblower marks to which it has made reference have been registered. Likewise, this is not a case where tacking is applicable, since none of the referenced marks is the legal equivalent of HORNBLOWER & WEEKS. *See Van Dyne-Crotty*, *supra*, 17 USPQ2d at 1868.[6]

The only issue remaining for consideration is the *pleaded* affirmative defense by which applicant asserts that it is applicant which has superior rights in the mark HORNBLOWER & WEEKS and that opposer's use of that mark "constitutes a fraudulent trading on the reputation of others."[7] We consider applicant's request, set forth

---

[6] Opposer argues that applicant cannot, in any event, rely on or tack on marks which may have been used by applicant's president, his relations, or other third parties, since applicant has not established the requisite legal relationships or submitted requisite affidavits or documentation of the use of these marks. In this regard, we note that all we can derive from the declaration of applicant's president is that he asserts he has provided counsel and advice to investors under the Hornblower name "in recent years" and that his brother, Paul S. Hornblower, "has owned and operated seats on the New York Board of Trade and/or the Chicago Mercantile Exchange, since 1981 to the present, using his name P.S. Hornblower." We need not, however, address these issues of fact because, as a matter of law, none of the referenced marks is the legal equivalent of HORNBLOWER & WEEKS.

[7] The first of the three paragraphs applicant has denominated as affirmative defenses, i.e., paragraph 11, which asserts that the notice of opposition fails to state a claim upon which relief can be granted, is not a true affirmative defense and shall not be considered as such. In any event, it is clear that the notice of opposition is a sufficient pleading. Likewise, the second of these paragraphs, i.e., paragraph 12, does not by itself state an affirmative defense, but is in effect a denial

in its response to opposer's motion for summary judgment, for relief granting registration to applicant based on its involved application, as a cross-motion for summary judgment in applicant's favor on its pleaded affirmative defense.

The threshold question is whether applicant has properly pleaded its affirmative defense. Federal Rule 8(c) specifies, inter alia, some "standard trademark …defenses, such as estoppel, laches, fraud, license, and res judicata, but it [allows] 'any other matter constituting an avoidance or affirmative defense.'" *See* 3 J. Gilson *Trademark Protection and Practice* §8.12[1] at 8-249-250 (1999). *Compare* Section 33 of the Lanham Act, 15 U.S.C. §1115.

Although poorly articulated, we view applicant's pleading as an attempt to set up an affirmative defense that opposer has "unclean hands." Assertion of the defense of unclean hands, though often based on allegations of fraud, misrepresentation of source, or violation of antitrust laws, "may result from any imaginable immoral or illegal conduct." *See* 3 J. Gilson *Trademark Protection and Practice* §8.12[13] (1999).

---

of opposer's allegation of prior use. We consider paragraphs 12 and 13 together as stating one affirmative defense.

Where the conduct alleged to have resulted in unclean hands relates to a plaintiff's acquisition, or attempt to acquire, a registration, the unclean hands defense goes only to the plaintiff's ability to rely on its registration, not to its common law rights. *See, e.g., Gilbert/Robinson Inc. v. Carrie Beverage-Missouri Inc.,* 758 F.Supp. 512, 526, 19 USPQ2d 1481, 1489 (E.D. Mo. 1991) (Even though a jury found that plaintiff had obtained its trademark registration fraudulently, the court held, "[n]onetheless, plaintiff is still entitled to protect its common law rights, and the doctrine of unclean hands does not act as a bar to that right."). When, however, the assertedly improper conduct relates to the use of the mark, the defense may be considered even in relation to rights acquired through use. *See Independent Grocers' Alliance Distributing Co. v. Zayre Corporation,* 149 USPQ 229 (TTAB 1966) (Though the Board did not find for applicant on the issue, it considered applicant's assertion that the opposer, relying not on a registration but on rights acquired through use, had unclean hands because it misused the statutory registration symbol.)

In this case, we find that there is no genuine dispute as to any material fact and that as a matter of

17

law applicant cannot succeed on the unclean hands defense that opposer is fraudulently trading on the reputation of others, i.e., applicant and/or its shareholders. In this regard, we note that opposer, in support of its motion for summary judgment, submitted excerpts from the discovery deposition of Ralph Hornblower, III, applicant's president. During that deposition, Mr. Hornblower produced a copy of a letter he had received from the president of NASD Regulation, Inc. [NASDR], which was submitted as an exhibit to the deposition.

The NASDR letter acknowledges Mr. Hornblower's complaints "regarding use of the name 'Hornblower Weeks' by a member of the National Association of Securities Dealers, Inc."; reports that that member had changed its name from "Baker Weeks" to "Hornblower Weeks"; acknowledges that members of the Hornblower family "were formerly associated with a firm named 'Hornblower & Weeks, Hemphill-Noyes[']"; that that firm, however, changed its name in 1981 "and no NASD member firm used the name 'Hornblower Weeks' or any variation thereof from 1981 to 1996"; that NASD rules do "not prohibit a firm from selecting a name used by a former NASD member, particularly when such name has been inactive on the NASD rolls for more than 15 years"; and that nothing in Mr.

18

Hornblower's correspondence suggests "that Hornblower Weeks [opposer] is explicitly holding itself out as a successor to your family's firm. As such, NASD Regulation's Office of General Counsel does not believe at this time that Hornblower Week's [sic] name and logo create any regulatory issues that would warrant NASD Regulation enforcement action." In addition, applicant's president, in his discovery deposition, states that he believed the HORNBLOWER & WEEKS mark to have been abandoned by the securities firm that his family firm had merged into, and further that "therefore, I thought it was first come, first serve on Hornblower & Weeks…." (Hornblower dep. p. 32).

Under these circumstances, there is no genuine dispute that opposer adopted a mark that even applicant's president believed had been abandoned and which was viewed by applicant and relevant regulatory authorities as available for adoption; and applicant has produced no evidence, or raised any expectation that at trial it could produce evidence, that opposer is using the adopted HORNBLOWER & WEEKS mark to fraudulently trade on the reputation of others. *Cf.* Kellogg Co. v. Pack'Em Enterprises Inc., 14 USPQ2d 1545, 1550 (TTAB 1990) (Summary judgment on opposition granted in favor of

applicant because opposer, in responding to motion, did not set out any evidence that it could produce at trial which could reasonably be expected to cause Board to come to a different conclusion.), *aff'd* 951 F.2d 330, 21 USPQ2d 1142 (Fed. Cir. 1991). In sum, we find that it is opposer, not applicant, that is entitled to entry of summary judgment in its favor on applicant's affirmative defense.

### *Conclusion*

In sum, there is no genuine issue of material fact in regard to either opposer's priority or likelihood of confusion and opposer is entitled, as a matter of law, to judgment in its favor in the opposition. Further, there is no genuine issue of material fact in regard to applicant's affirmative defense of unclean hands, and opposer is entitled to judgment in its favor on this defense. It was applicant's duty, once opposer demonstrated that it is entitled to judgment on its Section 2(d) claim, to establish that applicant has a valid affirmative defense and genuine issues of fact exist, for resolution by trial, in regard to such defense. Applicant has failed to do so.

Accordingly, we enter summary judgment in favor of opposer on both its Section 2(d) claim, insofar as it is based on opposer's claim of prior use of the HORNBLOWER & WEEKS mark, and on applicant's affirmative defense of unclean hands.